Jesse J. JOHNSON, Plaintiff,

v.

Robert E. HAMPTON, Chairman, United States Civil Service Commission, Mrs. Jayne Spain and Mr. Ludwig J. Andolsek, in their capacities as members of the United States Civil Service Commission, Robert E. Frohlke, Secretary, United States Army, Department of the Army, Berkley B. Thornton, as an Individual and in his capacity as Civilian Personnel Officer, Fort Eustis, Virginia, Richard E. Criner, Lieutenant Colonel, Retired, as an Individual and in his former capacity as Director, Non-Resident Training Department, Fort Eustis, Virginia and James T. Lane, Department of the Army Civilian, Retired, as an Individual and in his former capacity as Director, Course Development Division, Fort Eustis, Virginia, Defendants.

Jesse J. JOHNSON, Plaintiff,

v.

Robert E. HAMPTON, Chairman, United States Civil Service Commission, and other commission members, Mrs. Jayne Spain and Mr. Ludwig J. Andolsek, all Individually and as chairman and members of the United States Civil Service Commission, their agents, assigns, and successors in office, James R. Schlesinger, Secretary of the Defense, Individually and as Secretary of Defense, and his agents, assigns, and successors in office, Howard H. Callaway, Secretary of the Army, Individually and as Secretary of the Army, and his agents, assigns, and successors in office and Colonel Bernard Big, Commanding Officer, Fort Monroe, Individually and as Commanding Officer, Fort Monroe, Virginia, U. S. Army, and his agents, assigns, and successors in office, Defendants.

Civ. A. Nos. 98–72–NN, 75–45–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

Jan. 31, 1977.

William Davis Butts, Jr., Newport News, Va., Larry R. Daves, Tyler, Tex., for plaintiff.

William B. Cummings, U. S. Atty., for Eastern District of Virginia by Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

These consolidated actions come before the Court for judgment following trial. Plaintiff, a Black male, is a Civil Service employee and has sued a variety of Government officials including the chairman and members of the Civil Service Commission, the Secretary of Defense, the Secretary of the Army, and various Civil Service employees at Fort Monroe, Virginia, and Fort Eustis, Virginia. The fundamental aspect of plaintiff's allegations is a charge of continuing racial discrimination which has resulted in improper treatment of plaintiff as an employee of the Federal Government from 1966 to the present. This Memorandum Opinion is entered pursuant to Rule 52(a), Federal Rules of Civil Procedure, as combined findings of fact and conclusions of law.

### FACTUAL BACKGROUND

The allegations of these suits can be divided into three categories: (A) the conduct of management prior to January 15, 1973 (the date of an agreement between the parties); (B) the conduct of supervisors, other employees and management at Fort Eustis after January 15, 1973; and (C) the failure of management to hire plaintiff for two announcements of an Equal Employment Opportunity Officer position in 1973 and 1974.

A. The plaintiff has alleged irregularities in his treatment from the time he first sought civilian employment with the Government as a course writer in February 1966. On July 17, 1967, plaintiff was hired as an Education Specialist/Course Writer at

the GS–9 level. Two years later he was separated from the service based on charges of inefficiency. This action was reversed after plaintiff's appeal, and plaintiff was restored to his GS–9 position. During the pendency of the appeal, the plaintiff's position had been abolished, and he was, therefore, subjected to a reduction-in-force (RIF) immediately upon his reinstatement. Plaintiff accepted, subject to appeal of the RIF action, a GS–7 Housing Referral Counsellor position. During his appeal from the RIF, plaintiff also initiated an Equal Employment Opportunity complaint which contained similar allegations of improper treatment. There followed an investigation of this complaint by the United States Army Civilian Appellate Review Office (USACA-RO). Meanwhile, decisions of the Philadelphia Regional Office and the Board of Appeal and Review of the Civil Service Commission affirmed the RIF of the plaintiff to the housing counsellor position. The first of these consolidated civil actions was filed in further appeal of the RIF. Thereafter, on January 13, 1973, the parties, by counsel, as part of EEO complaint investigation and settlement process, reached an agreement entitled "Informal Adjustment of Discrimination Complaint of Jesse J. Johnson." This agreement provided for, among other things, back pay, promotion, and EEO monitoring of plaintiff's working conditions and performance.

B. Plaintiff's allegations for the period following the agreement involve the level of supervision of his work and the general working conditions of his course writing position. He asserts that his supervisors refused to review and correct his work product and that superiors and fellow workers refused to converse with him. He claims these alleged acts of harassment were the result of racial prejudice and discrimination directed against him. He seeks relief against those in command of his fellow workers for failing to correct the situation.

C. Plaintiff in 1973 applied for an Equal Employment Opportunity Officer position at Fort Monroe pursuant to Merit Placement and Promotion Announcement 73–257. Each applicant under that announcement, including plaintiff, was rated not qualified. The position was readvertised in Announcement 74–16 and plaintiff was again told he lacked sufficient qualifying experience and was rated not qualified. Ultimately, another Black man, Isiah O. Gatling, was hired for the EEO position.

Plaintiff initiated an EEO complaint concerning his non-selection for the EEO officer position. This complaint was rejected. The second of these consolidated civil actions followed.

In addition to the foregoing, plaintiff has complained that the defendants have discriminated against him by failing to provide expeditious procedures and suitable standards for him to obtain review and relief for his discrimination complaints.

## RELIEF SOUGHT

Plaintiff seeks compensatory and punitive damages in the amount of $400,000.00 plus costs and attorney's fees. He also wants promotion to a GS–12 EEO Officer position with back pay. In addition, he asks for injunctive relief against the defendants to prevent them from denying him employment opportunities and from failing to correct the allegedly discriminatory actions of plaintiff's supervisors and co-workers.

## JURISDICTION

The plaintiff has alleged a wide variety of bases for the jurisdiction of this Court. The Court deems it sufficient to state that jurisdiction is founded upon 42 U.S.C. § 2000e, et seq. (dealing with employment discrimination). The Court finds that plaintiff cannot be afforded any relief under 42 U.S.C. § 1981 and its jurisdictional counterpart, 28 U.S.C. § 1343. In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that 42 U.S.C. § 2000e–16 is the exclusive remedy for Federal employees who allege discrimination in employment. That section provides a comprehensive and detailed set of procedures and remedies for discrimination claims.

**4**

"The balance, completeness, and structural integrity of § 717 are inconsistent with the [plaintiff's] contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief. His view fails, in our estimation, to accord due weight to the fact that unlike these other supposed remedies, § 717 does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers. Under the [plaintiff's] theory, by perverse operation of a type of Gresham's law, § 717, with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible. The crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination would be eliminated 'by the simple expedient of putting a different label on [the] pleadings.' *Preiser v. Rodriguez,* 411 U.S. 475, 489–490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."

*Id.* at 832–33, 96 S.Ct. at 1968 (footnote omitted). Therefore, this case is limited to claims of discrimination in employment as cognizable under 42 U.S.C. § 2000e–16.

### PRE–1973 CLAIMS

■ The Court is of the opinion that the informal adjustment reached by the parties in January 1973 constituted a full resolution of all issues of claimed discrimination prior to the agreement. Plaintiff received extensive benefits under that agreement including promotion and back pay. Plaintiff having accepted these benefits and having waived his right to hearing and decision of his complaint by the Director of the Equal Employment Opportunity, the issues raised by plaintiff were entirely disposed of. Although the parties did not refer to dismissal of the pending civil action in the agreement, a review of the records in this case discloses that the issues raised in the complaint were settled and that plaintiff obtained substantial relief. It would fly in the face of the sound policy of encouraging settlement of disputes to allow plaintiff to re-open all of the issues covered by the agreement.

### GENERAL POST–AGREEMENT CLAIMS

■ The plaintiff's description of his working relationship with his superiors and co-workers presents a situation far from that under which anyone would wish to work, and certainly undesirable in terms of productivity for the tax dollars spent to maintain such an office situation. However, the plaintiff has failed to show in the first instance that his unhappy relationship with those working with him is the result of racial bias and discrimination rather than personal animosity and conflict. In addition and perhaps of greater significance, is plaintiff's failure to show any racial bias or discrimination by the defendants in supervising and regulating the conduct of plaintiff's fellow employees. It is impractical, if not impossible, for anyone, legislature, court, or administrative body, to command respect, decency or cordiality from one person to another. While plaintiff presented evidence of failure by his supervisors to criticize and review his work, plaintiff has failed to show, even in the context established by the factual background of these cases, that the defendants' alleged failure to correct the situation was motivated by discriminatory intent. Accordingly, plaintiff is entitled to no relief on this claim.

### FAILURE TO HIRE PLAINTIFF AS EEO OFFICER

"Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority

group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."

*Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Citing this language with approval, the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), enunciated four elements for an employee to establish a prima facie case of racial discrimination:

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802, 93 S.Ct. at 1824 (footnote omitted).

As noted in an earlier Order of this Court in this case, relying on *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), plaintiff is entitled to a trial *de novo* in the District Court on his discrimination claim. The right to *de novo* presentation of the claim relates to the central issue of discrimination as prohibited by § 2000e–16. The issue of the administrative determination of plaintiff's qualification for the EEO Officer position must be considered in light of the agency proceedings. The administrative findings are entitled to weight and due consideration. Federal court review of such an agency decision, absent discrimination claims under § 2000e–16, is normally only "on the record" and the decision must be upheld if there is substantial evidence to support it. Allega-

tions of discrimination allow plaintiff to engage in discovery and to broaden the record with evidence to support his claim of discrimination as well as a *de novo* decision by the Court. If no discrimination or bias is found in the administrative decision making process, that decision is entitled to more nearly its usual weight because there is no reason to question its reliability or fairness as there might be if the decision could have been the product of prejudice.

The Court finds that the decision of Mrs. Brittain in rating plaintiff unqualified was not based on any impermissible bias or prejudice. Plaintiff's arguments regarding Mrs. Brittain's alleged comments about plaintiff fail to convince the Court that she incorrectly evaluated plaintiff's employment qualifications.

Evaluating the administrative decision in this light and in consideration of the weight of all the evidence, including the credibility and demeanor of the witnesses including plaintiff's expert witness on plaintiff's qualifications, the Court finds that the plaintiff has failed to prove by a preponderance of the evidence that he should have been rated as qualified for the EEO position he sought. Having failed to establish an essential element of a prima facie case, plaintiff's claim of discrimination in failing to hire him for the GS–12 position must fail.

The Court notes also the fact that a highly qualified Black male was eventually hired for the job sought by plaintiff. This fact tends to show the absence of racially prejudicial motives on the part of the defendants in these cases. Even had plaintiff established a prima facie case as outlined in *McDonnell-Douglas*, the Court is of the opinion that plaintiff's own personnel difficulties themselves could serve to disqualify him from selection to a position requiring great powers of conciliation and compromise. This, coupled with the hiring of a Black male, would be ample to rebut the charges brought by plaintiff.

Finally, as to plaintiff's general complaint that defendants have improperly

discriminated against him by providing inadequate avenues of complaint and redress for charges of discrimination, the Court can only conclude from the history of these cases that plaintiff has had most ample and effective resolution of his unfair employment practices complaints. The relief granted in the January 1973 agreement is overwhelming evidence that plaintiff has been able to obtain relief when he has made claims. In addition, the wide variety of investigations, hearings, counseling sessions, and monitoring processes illustrate the concern for the rights of all employees and serve rather than frustrate the goal of equal opportunity in the delicate and sensitive area of employment. The plaintiff has made no showing of the inadequacy of these procedures. His entire case history belies such a claim.

## CONCLUSION

Having found no case of discrimination or improper administrative handling of plaintiff's claim, the Court is of the opinion that plaintiff is not entitled to any of the various forms of relief demanded in his Complaints as amended. Accordingly, judgment is GRANTED for the defendants.