BROWN *v.* GENERAL SERVICES ADMINIS-
TRATION ET AL.

No. 74–768.   Argued March 1–2, 1976—Decided June 1, 1976

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 835. MARSHALL, J., took no part in the consideration or decision of the case.

*Eric Schnapper* argued the cause for petitioner. With him on the briefs were *Jack Greenberg, James M. Nabrit III, Charles Stephen Ralston, Melvyn R. Leventhal, Barry L. Goldstein,* and *Jeff Greenup.*

*Deputy Solicitor General Wallace* argued the cause for respondents. With him on the brief were *Solicitor General Bork, Assistant Attorney General Lee, Mark L. Evans, Robert E. Kopp,* and *Neil H. Koslowe.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The principal question presented by this case is whether § 717 of the Civil Rights Act of 1964 provides the exclusive judicial remedy for claims of discrimination in federal employment.

The petitioner, Clarence Brown, is a Negro who has been employed by the General Services Administration since 1957.[1] He is currently classified in grade GS–7 and has not been promoted since 1966. In December 1970 Brown was referred, along with two white colleagues, for promotion to grade GS–9 by his supervisors. All three were rated "highly qualified," and the promotion was given to one of the white candidates for the position. Brown filed a complaint with the GSA Equal Employment Opportunity Office alleging that racial discrimination had biased the selection process. That complaint was withdrawn when Brown was told that other GS–9 positions would soon be available.

Another GS–9 position did become vacant in June 1971, for which the petitioner along with two others was recommended as "highly qualified." Again a white applicant was chosen. Brown filed a second administrative complaint with the GSA Equal Employment Opportunity Office. After preparation and review of an investigative report, the GSA Regional Administrator notified the petitioner that there was no evidence that race had played a part in the promotion. Brown requested a hearing, and one was held before a complaints examiner of the Civil Service Commission. In February 1973, the examiner issued his findings and recommended decision. He found no evidence of racial discrimination; rather, he determined that Brown had not been advanced because he had not been *fully* cooperative.

The GSA rendered its final decision in March 1973. The agency's Director of Civil Rights informed Brown

---

[1] After the petition for writ of certiorari was filed, the petitioner was laterally transferred to another Government agency. That transfer does not affect his claim for backpay or for equitable relief. The petitioner is still classified as a GS–7 and still wants the specific GS–9 position in the GSA for which he applied in 1971.

by letter of his conclusion that considerations of race had not entered the promotional process. The Director's letter told Brown that if he chose, he might carry the administrative process further by lodging an appeal with the Board of Appeals and Review of the Civil Service Commission and that, alternatively, he could file suit within 30 days in federal district court.[2]

Forty-two days later Brown filed suit in a Federal District Court. The complaint alleged jurisdiction under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U. S. C. § 2000e *et seq.* (1970 ed. and Supp. IV), "with particular reference to" § 717; under 28 U. S. C. § 1331 (general federal-question jurisdiction); under the Declaratory Judgment Act, 28

---

[2] The letter stated in part:

"Therefore, based upon my findings, I am rendering the final agency decision on the complaint as follows:

"That the evidence in the case does not support the complaint of racial discrimination for promotion against you, but that you should receive career and performance counseling from your immediate supervisor to help you formulate plans to receive appropriate training and to correct your deficiencies as noted by management.

"If this decision does not meet with your satisfaction, you may file an appeal in writing, either in person or by mail, with the Board of Appeals and Review, U. S. Civil Service Commission, Washington, DC 20415. The Board's decision is the final administrative appeal. This appeal must be filed within 15 calendar days of receipt of this letter.

"If you choose to appeal to the Board of Appeals and Review, you retain the right to file a civil action in Federal district court within 30 calendar days after receipt of the Board's final decision on your appeal. You also have the right to file a civil action in Federal district court within 30 calendar days of receipt of this letter or 180 days after filing an appeal with the Board of Appeals and Review if no decision has been made."

U. S. C. §§ 2201, 2202; and under the Civil Rights Act of 1866, as amended, 42 U. S. C. § 1981.[3]

The respondents moved to dismiss the complaint for lack of subject-matter jurisdiction, on the ground that Brown had not filed the complaint within 30 days of final agency action as required by § 717 (c) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–16 (c) (1970 ed., Supp. IV). The District Court granted the motion.

The Court of Appeals for the Second Circuit affirmed the judgment of dismissal. 507 F. 2d 1300 (1974). It held, first, that the § 717 remedy for federal employment discrimination was retroactively available to any employee, such as the petitioner, whose administrative complaint was pending at the time § 717 became effective on March 24, 1972.[4] The appellate court held, second, that § 717 provides the exclusive judicial remedy for federal employment discrimination, and that the complaint had not been timely filed under that statute. Finally, the court ruled that if § 717 did not pre-empt other remedies, then the petitioner's complaint was still properly dismissed because of his failure to exhaust available administrative remedies. We granted certiorari, 421 U. S. 987 (1975), to consider the important issues of federal law presented by this case.

The primary question in this litigation is not difficult to state: Is § 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972, 42 U. S. C. § 2000e–16 (1970 ed., Supp. IV),

---

[3] Brown later moved for leave to amend his complaint to allege additional grounds of jurisdiction under 28 U. S. C. § 1343 (4) and the Tucker Act, 28 U. S. C. §§ 1346 (a) and (b), and to allege that more than $10,000 was in controversy. The District Court denied the motion, and the Court of Appeals did not review that order of denial.

[4] The parties have apparently acquiesced in this holding by the Court of Appeals, and we have no occasion to disturb it.

the exclusive individual remedy available to a federal employee complaining of job-related racial discrimination? But the question is easier to state than it is to resolve. Congress simply failed explicitly to describe § 717's position in the constellation of antidiscrimination law. We must, therefore, infer congressional intent in less obvious ways. As Mr. Chief Justice Marshall once wrote for the Court: "Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived . . . ." *United States* v. *Fisher,* 2 Cranch 358, 386 (1805).

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin. 42 U. S. C. §§ 2000e–2, 2000e–3 (1970 ed. and Supp. IV). Until it was amended in 1972 by the Equal Employment Opportunity Act, however, Title VII did not protect federal employees. 42 U. S. C. § 2000e (b). Although federal employment discrimination clearly violated both the Constitution, *Bolling* v. *Sharpe,* 347 U. S. 497 (1954), and statutory law, 5 U. S. C. § 7151, before passage of the 1972 Act, the effective availability of either administrative or judicial relief was far from sure. Charges of racial discrimination were handled parochially within each federal agency. A hearing examiner might come from outside the agency, but he had no authority to conduct an independent examination, and his conclusions and findings were in the nature of recommendations that the agency was free to accept or reject.[5] Although review lay in the Board of Appeals and Review of the Civil Service Commission, Congress found "skepticism" among federal employees "regarding the Commission's record in obtaining just resolutions of complaints and adequate remedies. This has, in turn, discouraged persons from filing complaints with the Com-

---

[5] S. Rep. No. 92–415, p. 14 (1971).

mission for fear that doing so will only result in antagonizing their supervisors and impairing any future hope of advancement." [6]

If administrative remedies were ineffective, judicial relief from federal employment discrimination was even more problematic before 1972. Although an action seeking to enjoin unconstitutional agency conduct would lie,[7] it was doubtful that backpay or other compensatory relief for employment discrimination was available at the time that Congress was considering the 1972 Act. For example, in *Gnotta* v. *United States,* 415 F. 2d 1271, the Court of Appeals for the Eighth Circuit had held in 1969 that there was no jurisdictional basis to support the plaintiff's suit alleging that the Corps of Engineers had discriminatorily refused to promote him. Damages for alleged discrimination were held beyond the scope of the Tucker Act, 28 U. S. C. § 1346, since no express or implied contract was involved. 415 F. 2d, at 1278. And the plaintiff's cause of action under the Administrative Procedure Act, 5 U. S. C. §§ 701–706, and the Mandamus Act, 28 U. S. C. § 1361, was held to be barred by sovereign immunity, since his claims for promotion would necessarily involve claims against the Treasury:

> "A suit against an officer of the United States is one against the United States itself 'if the decree would operate against' the sovereign; Hawaii v. Gordon, 373 U. S. 57, 58 . . . (1963)[,] or if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' Land v. Dollar, 330 U. S. 731, 738, . . . (1947); or if the effect of the judgment would be

---

[6] *Ibid.;* see H. R. Rep. No. 92–238, p. 24 (1971).

[7] See, *e. g., Bolling* v. *Sharpe,* 347 U. S. 497 (1954); *Youngstown Sheet & Tube Co.* v. *Sawyer,* 343 U. S. 579 (1952).

'to restrain the Government from acting, or to compel it to act,' Larson v. Domestic & Foreign Commerce Corp., 337 U. S. 682, 704, . . . (1949)." 415 F. 2d, at 1277.[8]

See also *Blaze* v. *Moon,* 440 F. 2d 1348 (CA5 1971) (no jurisdiction over suit by a Negro alleging wrongful discharge from Corps of Engineers).[9]

Concern was evinced during the hearings before the committees of both Houses over the apparent inability of federal employees to engage the judicial machinery in cases of alleged employment discrimination. See, *e. g.,* Hearings on S. 2515 *et al.* before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 92d Cong., 1st Sess., 296, 301, 308, 318 (1971); Hearings on H. R. 1746 before the General Subcommittee on Labor of the House Committee on Education and Labor, 92d Cong., 1st Sess., 320, 322, 385–386, 391–392 (1971). Although there was considerable disagreement over whether a civil action would lie to remedy agency discrimination, the committees ultimately concluded that judicial review was not available at all or, if available, that some forms of relief were foreclosed. Thus, the Senate Report observed: "The testimony of the Civil Service Commission notwithstanding, the committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U. S. Government defense of sovereign immunity or failure to exhaust administrative remedies

---

[8] By parity of reasoning, sovereign immunity would, of course, also bar claims against federal agencies for damages and promotion brought under the Civil Rights Act of 1866, as amended, 42 U. S. C. § 1981, and under the general federal-question jurisdictional grant of 28 U. S. C. § 1331.

[9] But see *DeLong* v. *Hampton,* 422 F. 2d 21 (CA3 1970) (jurisdiction in district court to review determination by the Civil Service Commission that plaintiff was properly dismissed).

with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt." S. Rep. No. 92–415, p. 16 (1971). Similarly, the House Committee stated: "There is serious doubt that court review is available to the aggrieved Federal employee. Monetary restitution or back pay is not attainable. In promotion situations, a critical area of discrimination, the promotion is often no longer available." H. R. Rep. No. 92–238, p. 25 (1971).

The conclusion of the committees was reiterated during floor debate. Senator Cranston, coauthor of the amendment relating to federal employment, asserted that it would, "[f]or the first time, permit Federal employees to sue the Federal Government in discrimination cases . . . ." 118 Cong. Rec. 4929 (1972). Senator Williams, sponsor and floor manager of the bill, stated that it "provides, for the first time, to my knowledge, for the right of an individual to take his complaint to court." *Id.*, at 4922.

The legislative history thus leaves little doubt that Congress was persuaded that federal employees who were treated discriminatorily had no effective judicial remedy. And the case law suggests that that conclusion was entirely reasonable. Whether that understanding of Congress was in some ultimate sense incorrect is not what is important in determining the legislative intent in amending the 1964 Civil Rights Act to cover federal employees. For the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was.[10]

This unambiguous congressional perception seems to

---

[10] The petitioner maintains that in 1972, despite adverse court decisions, 42 U. S. C. § 1981; the Mandamus Act, 28 U. S. C. § 1361; the Tucker Act, 28 U. S. C. § 1346; 28 U. S. C. § 1331 (general federal-question jurisdiction); and the Administrative Procedure Act,

indicate that the congressional intent in 1972 was to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination. We need not, however, rest our decision upon this inference alone. For the structure of the 1972 amendment itself fully confirms the conclusion that Congress intended it to be exclusive and pre-emptive.

Section 717 of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–16 (1970 ed., Supp. IV), proscribes federal employment discrimination and establishes an administrative and judicial enforcement system.[11] Section 717 (a) provides that all personnel actions affecting federal em-

---

5 U. S. C. § 702, all conferred jurisdiction on the federal courts in federal employment discrimination cases.

[11] Title 42 U. S. C. § 2000e–16 (1970 ed., Supp. IV) reads in full:

"(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage.

"All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

"(b) Civil Service Commission; enforcement powers; issuance of rules, regulations, etc.; annual review and approval of national and regional equal employment opportunity plans; review and evaluation of equal employment opportunity programs and publication of progress reports; consultations with interested parties; compliance with rules, regulations, etc.; contents of national and regional equal employment opportunity plans; authority of Librarian of Congress.

"Except as otherwise provided in this subsection, the Civil Service

ployees and applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin."

Commission shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Civil Service Commission shall—

"(1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency and each appropriate unit referred to in subsection (a) of this section shall submit in order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment;

"(2) be responsible for the review and evaluation of the operation of all agency equal employment opportunity programs, periodically obtaining and publishing (on at least a semiannual basis) progress reports from each such department, agency, or unit; and

"(3) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to equal employment opportunity.

"The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to—

"(1) provision for the establishment of training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential; and

"(2) a description of the qualifications in terms of training and experience relating to equal employment opportunity for the principal and operating officials of each such department, agency, or unit responsible for carrying out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.

"With respect to employment in the Library of Congress, authorities

Sections 717 (b) and (c) establish complementary administrative and judicial enforcement mechanisms designed to eradicate federal employment discrimination. Subsection (b) delegates to the Civil Service Commission full authority to enforce the provisions of subsection (a)

---

granted in this subsection to the Civil Service Commission shall be exercised by the Librarian of Congress.

"(c) Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant.

"Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

"(d) Section 2000e–5 (f) through (k) of this title applicable to civil actions.

"The provisions of section 2000e–5 (f) through (k) of this title, as applicable, shall govern civil actions brought hereunder.

"(e) Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity.

"Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure non-discrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government."

"through appropriate remedies, including reinstatement or hiring of employees with or without back pay," to issue "rules, regulations, orders and instructions as it deems necessary and appropriate" to carry out its responsibilities under the Act, and to review equal employment opportunity plans that are annually submitted to it by each agency and department.

Section 717 (c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain preconditions. Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the Civil Service Commission or, alternatively, he may, within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the Civil Service Commission. If he does appeal to the Commission, he may file suit within 30 days of the Commission's final decision. In any event, the complainant may file a civil action if, after 180 days from the filing of the charge or the appeal, the agency or Civil Service Commission has not taken final action.

Sections 706 (f) through (k), 42 U. S. C. §§ 2000e–5 (f) through 2000e–5 (k) (1970 ed. and Supp. IV), which are incorporated "as applicable" by § 717 (d), govern such issues as venue, the appointment of attorneys, attorneys' fees, and the scope of relief. Section 717 (e), finally, retains within each governmental agency "primary responsibility to assure nondiscrimination in employment . . . ."

The balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717 (c) was designed merely to supplement other putative judicial relief. His view fails, in our estimation, to accord due

weight to the fact that unlike these other supposed remedies,[12] § 717 does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers. Under the petitioner's theory, by perverse operation of a type of Gresham's law, § 717, with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible. The crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination would be eliminated "by the simple expedient of putting a different label on [the] pleadings." *Preiser* v. *Rodriguez,* 411 U. S. 475, 489-490 (1973). It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.

The petitioner relies upon our decision in *Johnson* v. *Railway Express Agency,* 421 U. S. 454 (1975), for the proposition that Title VII did not repeal pre-existing remedies for employment discrimination. In *Johnson* the Court held that in the context of *private employment* Title VII did not pre-empt other remedies. But that decision is inapposite here. In the first place, there were no problems of sovereign immunity in the context of the *Johnson* case. Second, the holding in *Johnson* rested upon the explicit legislative history of the 1964 Act which " 'manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.' " 421 U. S., at 459, quoting *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, 48 (1974). Congress made clear " 'that the remedies available to the individual

---

[12] See n. 10, *supra.*

under Title VII are co-extensive with the indiv[i]dual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U. S. C. § 1981, and that the two procedures augment each other and are not mutually exclusive.'" 421 U. S., at 459, quoting H. R. Rep. No. 92–238, p. 19 (1971). See also *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409, 415–417 (1968). There is no such legislative history behind the 1972 amendments. Indeed, as indicated above, the congressional understanding was precisely to the contrary.

In a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies. In *Preiser* v. *Rodriguez, supra,* for example, state prisoners whose good-time credits had been canceled for disciplinary reasons brought suit under the Civil Rights Act of 1871, as amended, 42 U. S. C. § 1983, in conjunction with a habeas corpus action. Although acknowledging that the civil rights statute was, by its terms, literally applicable, we held that challenges to the fact or duration of imprisonment appropriately lie only under habeas corpus, the "more specific act." Permitting such challenges to be brought under the general, civil rights statute, where exhaustion is not required, would undermine the "strong policy requiring exhaustion of state remedies" when prisoners challenge the length of their confinement. 411 U. S., at 488–490. The Court has reached similar results in cases in which injured federal employees have claimed the right to proceed under facially applicable tort recovery statutes. *E. g., United States* v. *Demko,* 385 U. S. 149 (1966) (18 U. S. C. § 4126; Federal Tort Claims Act); *Patterson* v. *United States,* 359 U. S. 495 (1959) (Federal Employees' Compensation Act; Suits in Admiralty Act); *Johansen* v. *United States,* 343 U. S. 427 (1952) (Federal Employees' Compensation Act; Public Vessels Act). We have con-

sistently held that a narrowly tailored employee compensation scheme pre-empts the more general tort recovery statutes. See also *Fourco Glass Co.* v. *Transmirra Products Corp.,* 353 U. S. 222 (1957); *Stonite Products Co.* v. *Melvin Lloyd Co.,* 315 U. S. 561 (1942) (in patent cases, venue is governed exclusively by statute dealing specifically with patent cases; general venue statute held inapplicable).

In the case at bar, as in *Preiser* and the other cases cited above, the established principle leads unerringly to the conclusion that § 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment.

We hold, therefore, that since Brown failed to file a timely complaint under § 717 (c), the District Court properly dismissed the case. Accordingly, the judgment is affirmed.

*It is so ordered.*

Mr. Justice Marshall took no part in the consideration or decision of this case.

Mr. Justice Stevens, with whom Mr. Justice Brennan joins, dissenting.

Prior to the enactment of the Civil Rights Act of 1964 there was uncertainty as to what federal judicial remedies, if any, were available to persons injured by racially discriminatory employment practices in the private sector.[1] Against that background of uncertainty, Congress enacted a comprehensive remedial statute which did not expressly state whether it was exclusive of, or supplementary to, whatever other remedies might exist.

---

[1] *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, and *Johnson* v. *Railway Express Agency,* 421 U. S. 454, were not decided until 1974 and 1975 respectively.

In 1972 when Congress amended the statute to cover federal employees, there was similar uncertainty about what remedies were available to such employees. Since both the 1964 statute and the 1972 amendment were enacted in comparable settings, and since both pieces of legislation implement precisely the same important national interests, it is reasonable to infer that Congress intended to resolve the question of exclusivity in the same way at both times.

As the legislative history discussed in *Chandler* v. *Roudebush, post,* p. 840, demonstrates, Congress intended federal employees to have the same rights available to remedy racial discrimination as employees in the private sector.[2] Since the law is now well settled that victims of racial discrimination in the private sector have a choice of remedies and are not limited to Title VII,[3] federal employees should enjoy parallel rights.

---

[2] "In 1972 Congress extended the protection of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.* (1970 ed. and Supp. IV), to employees of the Federal Government. A principal goal of the amending legislation, the Equal Employment Opportunity Act of 1972, Pub. L. 92–261, 86 Stat. 103, was to eradicate ' "entrenched discrimination in the Federal service," ' *Morton* v. *Mancari,* 417 U. S. 535, 547, by strengthening internal safeguards and by according '[a]ggrieved [federal] employees or applicants . . . the full rights available in the courts as are granted to individuals in the private sector under title VII.' " *Chandler* v. *Roudebush, post,* at 841.

[3] In *Alexander* v. *Gardner-Denver Co., supra,* at 47–49, MR. JUSTICE POWELL for a unanimous Court stated:
"[L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination. In the Civil Rights Act of 1964, 42 U. S. C. § 2000a *et seq.,* Congress indicated that it considered the policy against discrimination to be of the 'highest priority.' *Newman* v. *Piggie Park Enterprises,* [390 U. S. 400,] 402. Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. See 42 U. S. C. § 2000e–5 (b) (1970 ed., Supp. II)

The reasoning which governed the decisions in *Johnson
v. Railway Express Agency,* 421 U. S. 454, and *Alexander
v. Gardner-Denver Co.,* 415 U. S. 36, applies with equal
force to federal employees. There is no evidence, either
in the statute itself or in its history, that Congress in-
tended the 1972 amendment to be construed differently
from the basic statute.

The fact that Congress incorrectly assumed that fed-
eral employees would have no judicial remedy if § 717
had not been enacted [4] undermines rather than supports

(EEOC); 42 U. S. C. § 2000e–5 (c) (1970 ed., Supp. II) (state and
local agencies); 42 U. S. C. § 2000e–5 (f) (1970 ed., Supp. II) (fed-
eral courts). And, in general, submission of a claim to one forum
does not preclude a later submission to another. Moreover, the leg-
islative history of Title VII manifests a congressional intent to allow
an individual to pursue independently his rights under both Title
VII and other applicable state and federal statutes. The clear in-
ference is that Title VII was designed to supplement, rather than
supplant, existing laws and institutions relating to employment dis-
crimination."

In *Johnson* v. *Railway Express Agency, supra,* at 459, it was
noted:

"Despite Title VII's range and its design as a comprehensive solu-
tion for the problem of invidious discrimination in employment, the
aggrieved individual clearly is not deprived of other remedies he
possesses and is not limited to Title VII in his search for relief. . . .
In particular, Congress noted 'that the remedies available to the
individual under Title VII are co-extensive with the indiv[i]dual's
right to sue under the provisions of the Civil Rights Act of 1866, 42
U. S. C. § 1981, and that the two procedures augment each other
and are not mutually exclusive.' H. R. Rep. No. 92–238, p. 19
(1971). See also S. Rep. No. 92–415, p. 24 (1971). Later, in
considering the Equal Employment Opportunity Act of 1972, the
Senate rejected an amendment that would have deprived a claimant
of any right to sue under § 1981. 118 Cong. Rec. 3371–3373
(1972)."

[4] Since the Court does not question the proposition that other
remedies would have been available if not foreclosed by its exclusive
reading of § 717, no purpose would be served by discussing the

the Court's conclusion that Congress intended to repeal or amend laws that it did not think applicable. Indeed, the General Subcommittee on Labor of the House Committee on Education and Labor rejected an amendment which would have explicitly provided that § 717 would be the exclusive remedy for federal employees.[5] In sum, the legislative history of § 717 discloses a clear intent to provide federal employees with rights that parallel those available to employees in the private sector, no evidence of an intention to make the remedy exclusive, and the rejection of an amendment which would have so provided.[6]

---

status of any alternative remedy. In view of the Court's holding, it is equally pointless to discuss the respondents' contention that the action is barred by petitioner's failure to exhaust administrative remedies. In this connection, however, the discussion in *Johnson, supra,* at 461, is instructive.

[5] The minority of the Committee in stating its views on H. R. 1746 in the final Committee report included the following paragraph:

"Failure to Make Title VII an Exclusive Federal Remedy. Despite the enactment of title VII of the Civil Rights Act, charges of discriminatory employment conditions may still be brought under prior existing federal statutes such as the National Labor Relations Act and the Civil Rights Act of 1866. In view of the comprehensive prohibitions against discrimination contained in title VII, and the intent of the Committee bill to consolidate procedures and remedies under one agency, it would be consistent to make title VII the exclusive remedy. No public interest is served in continuing to permit a multiplicity of statutes or forums to deal with discrimination in employment. However, our attempt to amend the Committee bill to make title VII an exclusive remedy (except for pattern or practice suits) was rejected. In our view, the failure to make this an exclusive remedy merely encourages an individual who has lost his case in one forum under one statute to relitigate his case in still another forum under another federal statute." H. R. Rep. No. 92–238, p. 66 (1971).

[6] To the extent that multiple remedies may impose an undesirable burden on employers, it seems to me that the problem is most apt

The burden of persuading us that we should interpolate such an important provision into a complex, carefully drafted statute is a heavy one. Since that burden has not been met, I would simply read the statute as Congress wrote it.

---

to be redressed in an impartial manner by assuming that Congress intended to subject—and will continue to subject—public and private employers to similar rules.