**Frank JOHNSON, Plaintiff-Appellant,**

**v.**

**Verne ORR, Secretary of the United States Department of the Air Force, and the United States Department of the Air Force, Defendants-Appellees.**

**No. 83–2306.**

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1984.

Steven M. Angel, Oklahoma City, Okl., for plaintiff-appellant.

Robert D. Dennis, Asst. U.S. Atty., W.D. Okl., Oklahoma City, Okl. (William S. Price, U.S. Atty., W.D. Okl., Oklahoma City, Okl., and David P. Buck, Lieutenant Colonel, USAF, General Litigation Div. of the Judge Advocate General, Washington, D.C., were with him on brief), for defendants-appellees.

Before LOGAN, BREITENSTEIN and McWILLIAMS, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a suit by plaintiff-appellant Johnson against the Secretary of the United States Department of the Air Force and the United States Department of the Air Force. It arises from the placement of plaintiff by defendants on a seven month enforced leave for a medical disability. The district court sustained the defendants' motion to dismiss. Plaintiff appeals asserting violation of certain federal statutes. We affirm.

Plaintiff has been employed as a warehouseman at Tinker Air Base since 1966. The position required him to be able to lift 75 pounds. While working as a warehouseman, he incurred a back injury on May 10, 1971. In June, 1972, February, 1975, and July, 1977, he was examined by three different private physicians to determine his fitness-for-duty. All imposed weight lifting restrictions of less than 75 pounds. On his last examination he was restricted to lifting objects of 25 pounds or less and from prolonged walking or standing. A few weeks later the weight restriction was raised to 45 pounds and the walking and standing restrictions were removed.

In July, 1978, the Air Force implemented a new policy for employees working under medical restrictions. Those having medical restrictions were ordered to have a fitness-for-duty examination. If the medical restrictions still persisted, the employee was to be transferred to a 60-day detail position in which the restrictions did not prevent the employee from performing his duties. This reassignment was offered in lieu of separation. If at the end of such 60 days the restrictions were not lifted or the employees reassigned, he was to be placed on enforced leave. This was to enable the employee to initiate disability retirement proceedings and to give the agency an opportunity to find a reassignment position acceptable to the employee.

Plaintiff was placed on a 60-day detail as a clerk, effective February 26, 1979. After his accrued annual and sick leave were exhausted, he was placed on leave without pay on May 15, 1979. On June 1, 1979, he applied for disability retirement. On July 12, 1979, he was examined by a private physician who found that he had an unstable lumbo-sacral condition which required minor lifting limitations and that if the minor restrictions were applied, he was not disabled. On June 25, 1979, he was offered reassignment to supply clerk which he declined. On October 18, 1979, a notice of proposed removal was issued for plaintiff. On November 7, 1979, the Office of Personnel Management denied his application for disability retirement because he was not totally disabled.

On November 15, 1979, plaintiff's private physician had a consultation with two government physicians which concluded in the government physicians recommending that plaintiff's lifting restrictions be raised to 75 pounds. On November 26, 1979, the Civilian Personnel Office cancelled the notice of separation and the plaintiff returned to work.

Plaintiff appealed the action placing him on enforced leave to the Dallas Field Office of the Merit Systems Protection Board, MSPB. This appeal did not allege handicap discrimination. The Dallas Field Office dismissed the appeal for lack of jurisdiction. The MSPB vacated this decision on July 1, 1981, and remanded the case to the Dallas Field Office to determine if plaintiff's enforced leave was an adverse action under 5 U.S.C. § 7512. 7 MSPB 3.

The Dallas Field Office conducted a hearing on September 15–16, 1981 at which the issue of handicap discrimination was raised for the first time. The Dallas Field Office determined that an enforced leave was an adverse action only where the employee established that he is "ready, willing and able" to perform work at the time of enforced leave. As plaintiff was not able to perform his duties at the time of the enforced leave, the action was not appealable to the MSPB. In addition, the Dallas Field Office concluded that the MSPB lacked jurisdiction over plaintiff's handicap discrimination claim because there was no appealable adverse action. The MSPB affirmed

the decision of the Dallas Field Office. 12 MSPB 180.

Plaintiff then filed an action in federal district court challenging the MSPB's decision dismissing the appeal. The district court upheld the MSPB's determination that it had no jurisdiction. Plaintiff appeals from the judgment of the district court seeking wages and benefits lost during the period of enforced leave. He first argues that his placement on enforced leave was a suspension under 5 U.S.C. § 7512 entitling him to certain procedural rights which he did not receive.

Section 7512 lists those actions over which MSPB has jurisdiction to include a suspension for more than 14 days. He also argues that he was entitled to certain procedural rights such as notice and an opportunity to be heard under § 7513. Under 5 C.F.R. § 1201.56(a)(2), plaintiff must prove there is jurisdiction. Under 5 U.S.C. § 7703(c), a court may not set aside a decision of MSPB unless it is found to be (1) arbitrary or capricious, (2) not in accordance with procedural requirements, or (3) not supported by substantial evidence. *Vigil v. Post Office Department of the United States*, 10 Cir., 406 F.2d 921, 924.

In *Mosely v. Department of the Navy*, 4 MSPB 220, the MSPB established three criteria which must be met before an enforced leave is considered a "suspension." First, the employee must have been placed on enforced leave without his consent. Second, the employee must have been ready, willing and able to work during his period of leave. Third, the enforced leave must have been used in a personal disciplinary situation.

The MSPB found that plaintiff did not meet either the second or third *Mosely* criteria. It found that plaintiff was physically unable to perform all the duties of his position during the period of enforced leave and that, consequently, he was not "able" under the second *Mosely* criteria. R. Vol. II, p. 301–302. In addition, it found that the enforced leave action was not taken in a personal disciplinary proceeding, but rather was taken because of the medical restrictions placed on plaintiff. Applying the standards of *Vigil*, the district court affirmed the MSPB's decision that it was without jurisdiction.

Plaintiff argues that the standard the MSPB used in determining whether he was ready, willing and able to work was incorrect. Rather than use the test of whether an employee can perform all of his duties, the plaintiff would have the court impose on MSPB the test of whether the employee can perform substantially all of his duties. Plaintiff cites *United States v. Wickersham*, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798, and its progeny for the assertion that only an employee who was totally unable to perform his work was considered not "ready, willing and able to work."

Plaintiff's interpretation of these cases is incorrect. The Dallas Field Office said, R. Vol. II, p. 261:

> "... those cases do imply that when there has been a determination of 100 percent or total disability and an absence of strong evidence to the contrary, then the determination would be that the employee is unable to perform the duties of his position ....
>
> The appellant's argument, however, is that the *Wickersham* line of cases can be interpreted to mean that the converse holds true, that is, that a determination of less than total disability means that the employee *is able* to perform his duties. Yet none of those cases even imply such a meaning...."

The only case that utilized plaintiff's proposed standard is *Piccone v. United States*, 407 F.2d 866, 186 Ct.Cl. 752. The MSPB correctly distinguishes *Piccone* from the case at bar, saying, R. Vol. II, p. 302:

> "... the *Piccone* standard which appellant argues is applicable to this case has only been employed in cases such as *Piccone* which deal with a backpay request by an employee who was separated for disability. The *Piccone* standard ... does not apply to the *Mosely*-type situation involving enforced leave where ability to perform is required."

The Supreme Court has said, *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616, quoting *Unemployment Compensation Commission v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136:

"To sustain the [agency's] application of [a] statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question risen in the first instance in judicial proceedings."

The Supreme Court has also said, *Miller v. Youakim,* 440 U.S. 125, 145 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194, quoting *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, footnote omitted:

"... the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong."

The standard adopted by MSPB in order to determine whether an enforced leave is a suspension within the meaning of § 7512, requiring an employee to be able to perform all the duties of his position, is reasonable. We agree with the trial court that the MSPB's decision to dismiss plaintiff's appeal was neither arbitrary nor capricious and was within the procedural requirements.

Plaintiff argues that MSPB and the district court had jurisdiction over the plaintiff's handicap discrimination claim. Section 7702, Title 5 U.S.C., provides:

"(a)(1)(A) [Any employee who] has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board and (B) alleges that a basis for the action was discrimination prohibited by ... (iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) ... the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section."

We have found that the MSPB did not have jurisdiction over the enforced leave claim. Therefore, MSPB did not have jurisdiction over plaintiff's discrimination claim because it was not filed in connection with an appealable action as required by § 7702.

Plaintiff argues that even if we find that the MSPB did not have jurisdiction over his handicap claim, the district court has jurisdiction. Defendant says that plaintiff failed to exhaust his administrative remedies and thus the district court lacked jurisdiction over the discrimination claim. Section 717(a) of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e–16(a) prohibits discrimination in federal employee personnel actions on the basis of race, color, religion, sex or national origin. Section 2000e–16(b) provides the Equal Employment Opportunity Commission with the authority to enforce § 2000e–16(a), while § 2000e–16(c) permits an employee to file suit in federal court alleging a violation of § 2000e–16(a).

The United States Supreme Court held in *Brown v. General Services Administration,* 425 U.S. 820, 828–829, 96 S.Ct. 1961, 1965–1966, 48 L.Ed.2d 402 that Congress intended for § 2000e–16 to be the exclusive and pre-emptive judicial remedy for federal employment discrimination. Consequently, the court held that before a complainant may file suit in federal court, he must satisfy "certain preconditions," namely he "must seek relief in the agency that has allegedly discriminated against him." Id. at 832, 96 S.Ct. at 1967. The Tenth Circuit has held that exhaustion of administrative remedies is a jurisdictional prerequisite to suit under § 2000e–16. *Sampson v. Civiletti,* 10 Cir., 632 F.2d 860, 862; *Bragg v. Reed,* 10 Cir., 592 F.2d 1136, 1138.

Section 2000e–16 does not mention handicap discrimination. However, 29 U.S.C. § 794a(a)(1) extends the remedies available under § 2000e–16 to federal employees with handicap discrimination claims. *Smith v. United States Postal Service,* 6 Cir., 742 F.2d 257, 259. That court felt,

and we agree, that in enacting § 794a(a)(1) providing for " 'remedies, procedures and rights' set forth in [§ 2000e–16] to redress handicap discrimination by federal agency employers, it is evident that Congress intended to invoke ... the requirement that a claimant exhaust administrative remedies before filing suit in federal court." Id. at 261.

The plaintiff did not file his appeal with the MSPB until July 27, 1979, 88 days after the enforced leave began. Also, it found that plaintiff did not raise the discrimination claim until more than two years after the enforced leave was taken.

The Equal Employment Opportunity Commission regulations establish the procedure for filing and review of discrimination complaints. Under 29 C.F.R. 1613.-214(a)(1)(i), a complainant must notify the Equal Employment Opportunity Counselor for the appropriate agency of any charge of discrimination within 30 days of the date of the matter causing the complainant to believe he was discriminated against, or within 30 days of the date of the allegedly discriminatory personnel action. Plaintiff filed no administrative complaints under the procedures provided by 29 C.F.R. 1613.-214(a)(1)(i).

The presiding officer allowed the plaintiff to amend his complaint to add the discrimination charge even though he found that the plaintiff had not been put on notice of discrimination for the first time or discovered a new basis for the agency's action. The district court held that there could not have been a waiver of the time requirements because the MSPB had jurisdiction to hear the discrimination complaint only if the complaint had been filed in connection with an appeal of an adverse action. The court said, R. Vol. I, p. 215:

> "The agreement by the Field Office to permit plaintiff to add his discrimination complaint was by no means a waiver because the Field Office never even found an adverse action had been taken and thus never reached the merits of plaintiff's discrimination charge."

We agree with the district court that plaintiff is barred from raising the discrimination claim because he failed to exhaust his administrative remedies.

Plaintiff claims that he may recover his lost pay under 5 U.S.C. § 5596 which provides, § 5596(b)(1), that an employee who is found under applicable law or regulation to have suffered a loss in pay shall be entitled to recover. The district court ruled against plaintiff saying, R. Vol. I, p. 217:

> "In this case, there was never any administrative determination that plaintiff had been affected by an unjustifiable or unwarranted personnel action. Rather, plaintiff was reinstated in his job as warehouseman when his personal physician and government physicians determined the lifting restrictions could be raised."

We agree that the record fails to show that the enforced leave violated any statute or regulation. See *United States v. Connolly*, Fed.Cir., 716 F.2d 882, 887–888, cert. denied ––– U.S. –––, 104 S.Ct. 1414, 79 L.Ed.2d 740.

Affirmed.