**Marbella MADRID, Plaintiff,**

v.

**Donald B. RICE, Secretary of the Air Force, Defendant.**

**No. C89–0205–B.**

United States District Court,
D. Wyoming.

Feb. 12, 1990.

Carole Shotwell, Cheyenne, Wyo., for plaintiff.

Carole Statkus, Asst. U.S. Atty., D. Wyo., Cheyenne, Wyo., Joseph J. Trafacanti, Major, USAF Trial Atty., Office of The Judge Advocate Gen., Washington, D.C., for defendant.

## ORDER ON PENDING MOTIONS

BRIMMER, Chief Judge.

This matter comes before the Court on defendant's motions to dismiss, to strike jury demand, to strike plaintiff's on-the-job injury claims, to strike plaintiff's demand for general damages, and to dismiss plaintiff's derogatory remarks claim. The Court, having considered the motions and pleadings, having heard the arguments of counsel, and being fully advised in the premises, now FINDS and ORDERS as follows:

### Background

Plaintiff Marbella Madrid was employed by the Air Force in the Contract Management Division from April, 1984, to June, 1988. She worked at Warren Air Force Base, Wyoming, as a GS–5 secretary.

Plaintiff's complaint centers around the alleged creation of an adverse or hostile environment in the work place, the resulting constructive discharge, and defendant's failure to promote plaintiff to positions for which she was qualified and eligible, all in violation of Title VII.

Plaintiff alleges that a co-employee, Mr. Kirk Christianson, an Administrative Contracting Officer, began making derogatory, insulting, and demeaning remarks of a sexual nature to plaintiff, shortly after he was first hired in August, 1984. Plaintiff claims she reported Mr. Christianson to her supervisors, including Major Travers, but that they took no corrective action. The situation continued, plaintiff alleges, until November, 1987. At that time, she contacted Jack Miller, Acting Chief of Personnel Division. He contacted Major Travers and Major Travers, in turn, contacted the Chief of the Contracting Division, Loren Hess. Mr. Hess spoke to Mr. Christianson about the problem. Subsequent to this, plaintiff claims she was told that if there were continuing problems, she should file a formal complaint or look for another job. Plaintiff alleges that after she reported Christianson, Christianson and other co-workers took an increasingly negative attitude toward her, openly criticizing her, leaving the room when she came in, and so on. This negative working environment, plaintiff claims, forced her to leave her job.

Plaintiff also alleges that she was passed over for a promotion twice due to sex discrimination. The first time was in December, 1985. Plaintiff claims she was deemed not qualified because her college transcripts weren't in her file, even though they should have been. The second potential promotion was available in late 1987, for which, plaintiff claims, she was fully qualified. Her records were complete by this time. In fact, plaintiff claims she ranked number one on the certification form for the 1987 position. Plaintiff complains she was not considered for the new position because Loren Hess wanted a man in the position, and not plaintiff, a woman. Plaintiff claims Mr. Hess told a fellow co-worker this on February 25, 1988. Defendant claims plaintiff's supervisors merely decided not to fill the position plaintiff sought and that plaintiff was informed of this sometime in late 1987. No sex discrimination was involved according to defendant.

In response, plaintiff filed charges of sexual harassment (Count I), constructive discharge (Count V), and sexual discrimination (Count II). Plaintiff also filed pendent state claims for infliction of emotional distress (Counts III and IV).

Defendant has not yet filed his answer. Instead, he has filed a motion to dismiss, a motion to strike jury demand, a motion to strike plaintiff's on-the-job injury claims, a motion to strike demand for general damages, and a motion for to dismiss derogatory remarks claim. Defendant also filed a motion to dismiss defendants Major General Skipton and Colonel Farkas as improperly named parties. Plaintiff stipulated to their dismissal. The only remaining defendant is Donald B. Rice, Secretary of the Air Force.

### Standard for Review

■ Accompanying defendant's motions are two exhibits and an affidavit by Loren Hess. Motions to dismiss, however, usually are confined to the pleadings. *Mangels v. Pena*, 789 F.2d 836 (10th Cir.1986). But, where the moving party includes affidavits and other material pertinent to the motion, the court, without notice may convert a motion to dismiss to a motion for summary judgment provided the opposing party has responded by filing his or her own affidavits. *United States v. Gutierrez*, 839 F.2d 648, 651 (10th Cir.1988). Because both parties in this case have submitted several affidavits and other exhibits, the Court hereby converts the defendant's motions to dismiss to motions for summary judgment. The various affidavits and exhibits presented were reviewed and considered by the Court in ruling on defendant's motions.

Summary judgment should be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In *Manders v. Oklahoma ex rel. Department of Mental Health*, 875 F.2d 263 (10th Cir.1989), the Tenth Circuit established the guidelines for the issuance of summary judgment.

In considering a party's motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Barber v. General Electric Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).... Under [Rule 56(c)], the initial burden is on the moving party to show the court 'that there is an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323 [106 S.Ct. at 2552].

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must 'make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *Id.* at 322 [106 S.Ct. at 2552]; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). The party resisting the motion 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]. The mere scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251 [106 S.Ct. at 2511].

### Discussion

I. Defendant's Motion to Dismiss for Failure to Exhaust

■ Plaintiff filed an informal complaint with an Equal Employment Opportunity (EEO) counselor on March 22, 1988. Under Equal Employment Opportunity Commission (EEOC) guidelines, an employee must bring "to the attention of [an EEO] counselor the matter causing [the employee] to believe [she] has been discriminated against within 30 days of the date of the alleged discriminatory event." 29 C.F.R. § 1613.214(a)(i). The defendant argues that plaintiff did not comply with these time limits and, therefore, is barred from pursuing her action because of her failure to exhaust her administrative remedies. This Court, accordingly, is without jurisdiction, defendant contends.

The sexual harassment of which plaintiff complains, ceased in November, 1987, 112 days before plaintiff filed an informal complaint. In addition, plaintiff was informed of her nonselection for a promotion in November or December, 1987. Plaintiff claims that promotion was denied to her on the basis of sex. Defendant claims this denial occurred 90 days prior to plaintiff's informal complaint. Plaintiff also alleges that a prior possible promotion in 1985 was denied due to sex discrimination. This was certainly greater than 30 days prior to plaintiff's complaint.

Defendant points to *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), which held that plaintiff Clarence Brown's failure to timely file his complaint was grounds for dismissal of his claim by the courts. The Tenth Circuit, in *Johnson v. Orr*, 747 F.2d 1352, 1356 (10th Cir.1984), applied the reasoning in *Brown*, and held that "exhaustion of administrative remedies is a jurisdictional prerequisite to suit under § 2000e–16 [or Title VII]."

However, in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to equitable tolling." The Court in *Zipes*, unlike *Brown*, specifically addressed a situation where extenuating circumstances may result in tolling the filing requirement.

In a case decided a few months earlier than *Johnson*, the Tenth Circuit followed *Zipes* and held that "the thirty-day time limitation of section 2000e–16(c) is not jurisdictional and may be subject to equitable tolling in appropriate cases." *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir.1984). Another 1984 Tenth Circuit opinion involved the Occupational Safety and Health

Act of 1970 (OSHA) and its time limit for filing discrimination claims against an employer. *Donovan v. Hahner, Foreman & Harness, Inc.*, 736 F.2d 1421 (10th Cir. 1984). The court applied the analysis in *Zipes*, and found the OSHA 30–day time limits to be a statute of limitation subject to equitable tolling and not jurisdictional.

The rulings in these cases are inconsistent. The analysis and holdings in *Zipes*, *Martinez*, and *Donovan* contradict those in *Brown* and *Johnson*. *Zipes*, *Martinez*, and *Donovan* contain more specific analysis and focus directly on whether the filing time limit is subject to equitable tolling. The extenuating nature of the facts in these three opinions were substantial enough to concentrate the courts' attention on this very issue. *Brown* and *Johnson*, on the other hand, are much more general in their discussion of Title VII filing requirements. The facts in the two cases didn't present extenuating circumstances which might cause a court to reflect more carefully on its ruling. This Court finds *Zipes*, *Martinez*, and *Donovan* to be controlling.[1]

The Tenth Circuit summarized the factors which may be determinative in deciding if the Title VII time limits should be tolled.

> [T]he time limits ... will be tolled only where the circumstances of the case rise to a level of 'active deception' sufficient to invoke the powers of equity. For instance, equitable tolling may be appropriate where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts.' Likewise, if a plaintiff is 'actively misled,' or 'has in some extraordinary way been prevented from asserting his or her rights,' we will permit tolling of the limitations period.

*Martinez*, 738 F.2d at 1110 (citations omitted).

---

1. The confusion by the Tenth Circuit is reflected in disagreement which exists amongst the other circuit courts. The Seventh and Ninth Circuits find the time limits jurisdictional. *Kontos v. United States Department of Labor*, 826 F.2d 573 (7th Cir.1987). The Third, Fourth, Fifth, Eleventh, and District of Columbia Circuits treat timely filing as a statute of limitations. See *Ross v. United States Postal Service*, 814 F.2d 616, 617 (11th Cir.1987), for a discussion these circuits' holdings.

These factors need to be merged with the language contained within 29 C.F.R. § 1613.214(a)(ii)(4), which states that "[t]he agency shall extend the time limits in this section when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them [or] was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits...."

■ The plaintiff has outlined several reasons which she claims would support equitable tolling. Plaintiff maintains that supervisory personnel where plaintiff worked did not properly post information regarding the administration's requirements for filing an EEOC complaint.[2] Plaintiff also claims that an EEO counselor was not available on site until December, 1986.[3] In addition, once an EEO counselor was on site, the counselor did not follow the required procedure in handling plaintiff's complaints.[4] Plaintiff further contends that the EEO counselor never informed her of the procedures she needed to follow or the necessity to file an informal complaint, even after direct questions from the plaintiff on the subject, until February, 1988. Affidavit of Plaintiff Marbella Madrid at 7. All of these factors, plaintiff alleges, contributed either to her lack of awareness or involved circumstances beyond plaintiff's control and prevented her from timely filing her complaint. Plaintiff contends that these actions, or lack thereof, resulted in her being thwarted, actively misled, or lulled into inaction by her supervisors and EEO counselor, thereby delaying her filing a complaint.

Defendant disputes plaintiff's contentions. Defendant argues that plaintiff's supervisors did prominently post EEOC rules and regulations, including those that detailed the 30-day filing requirement, as early as 1983. *See* Affidavit of Michael E. McGuire. Moreover, defendant maintains that plaintiff, on more than one occasion, was adequately advised of her rights in this area and, therefore, had notice of the time requirement. Defendant contends that plaintiff cannot now claim she was unaware or actively misled, or that circumstances beyond her control caused her delay in filing an informal complaint.

Whether Ms. Madrid had notice of the filing requirements is a question of fact. The evidence is in direct conflict. *Compare* Affidavit of Michael E. McGuire *with* Affidavit of John Owen Miller. Furthermore, while the standard for equitable tolling is high, plaintiff has presented sufficient evidence to demonstrate that she may have been actively misled or lulled into inaction by her supervisors and EEO counselor. A genuine issue of material fact exists. Granting dismissal or summary judgment at this point would be improper.

## II. Defendant's Motions to Strike Demand for General Damages and to Strike Jury Demand

■ Plaintiff's general damage claims and jury demand arise out of her pendant state claims involving the infliction of emotional distress. Determining whether plaintiff is entitled to proceed on these matters, depends on whether plaintiff may

---

**2.** According to one witness, the EEOC announcements were not posted on the bulletin board until October, 1987. Affidavit of John Owen Miller at 1–2.

**3.** Affidavit of Cliff Harrison at 4–5. Plaintiff claims she did try to comply with proper procedures as best she could by contacting various personnel with the Kirtland Air Force Base ("Kirtland") when an EEO counselor was not available. The heads of Detachment 50, the civilian group plaintiff worked for, were housed at Kirtland. As indicated by the exhibits presented by plaintiff, her efforts met with little success and much confusion over who was responsible for helping plaintiff. *See* Plaintiff's

Memorandum in Resistance to Defendants' Motions, Exhibits 3–6.

**4.** Under 29 C.F.R. § 1613.213(a), the EEO counselor should, insofar as is practicable, conduct the final interview with the complainant within 21 days after the matter was called to the counselor's attention by the complainant. The complainant then has 30 days after his/her final interview to file a formal complaint of discrimination. Plaintiff went to the EEO counselor more than a dozen times after the counselor was installed in December, 1986. The counselor, however, did not conduct a final interview as indicated under 29 C.F.R. § 1613.213(a), until 1988.

file pendant state claims in a Title VII suit against a federal employer. The Supreme Court held that "in the context of private employment, Title VII does not pre-empt other remedies," but Title VII is the exclusive judicial remedy for claims of discrimination in *federal* employment. *Brown v. General Services Administration*, 425 U.S. 820, 833–34, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976) (emphasis deleted). *See also Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Therefore, no pendant state claims may be filed.

Plaintiff seeks support for her position in the Tenth Circuit's decision in *Jones v. Intermountain Power Project*, 794 F.2d 546 (10th Cir.1986). *Jones* is consistent with the Supreme Court's holding and doesn't really support plaintiff's position. The circuit court found that pendant state claims filed against private employers are not pre-empted by Title VII. *Jones* does not involve a federal employer. Therefore, under *Brown*, plaintiff Madrid's pendant state claims must be dismissed.

By dismissing plaintiff's state claims, plaintiff's request for general damages are also dismissed. While this Court has broad discretion to fashion whatever relief it deems appropriate in Title VII cases, even though not sought in the pleadings, the statute limits this Court to equitable relief only. *See Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir.1980).

Plaintiff's jury demand must also be stricken. The Supreme Court has held that since Title VII only provides for equitable remedies, there is no right to a jury trial. *Great American Savings and Loan Association v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979). By dismissing plaintiff's pendant state claim, she has no legal remedies available and, therefore, no basis for a jury trial.

## III. Defendant's Motion to Strike Plaintiff's On–The–Job Injury Claims

Defendant seeks to have plaintiff's on-the-job injury claims dismissed, claiming such injuries are covered by the Federal Employee Compensation Act. This Court, having reviewed plaintiff's complaint carefully, does not find any separate on-the-job injury claim. Plaintiff's complaint, liberally construed, includes claims for sexual harassment and discrimination, constructive discharge, and pendant state claims for emotional distress. Plaintiff claims that the alleged sexual harassment and discrimination she received caused some physical and emotional injury. Such injuries are pertinent only to the extent of formulating a remedy.

The Supreme Court has stated that Title VII is intended to be the exclusive, preemptive remedy for redress of federal employment discrimination. *Brown*, 425 U.S. at 828–29, 96 S.Ct. at 1965–66. Any claims plaintiff may have are limited to those provided by Title VII. This Court has broad discretion to devise an equitable remedy "to achieve the broad purpose of eliminating the efforts of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination." *Fitzgerald*, 624 F.2d at 957. For instance, where the evidence reveals an atmosphere of antagonism or hostility sufficient that reinstatement would not be effective, the court may award front pay. *Id.* Plaintiff's allegations of hostility by co-workers and its impact on her may be relevant, therefore, for the purpose of determining the appropriate remedy provided plaintiff prevails. Any injuries plaintiff claims occurred as a result of Title VII violations are pertinent to plaintiff's case and shall not be dismissed. Those injury claims which arise from plaintiff's pendant state claims are already dismissed.

## IV. Defendant's Motion to Dismiss Derogatory Remarks Claim

Defendant argues that plaintiff's only remaining claim is a constructive discharge claim. Plaintiff contends that the sexual harassment and discrimination she was subjected to as well as the ostracism and derogatory remarks she received were in violation of Title VII and forced her to leave her job. Defendant contends that plaintiff did not include the derogatory re-

marks charge in her informal complaint to the EEO counselor, thereby failing to exhaust her administrative remedies. Furthermore, defendant maintains that plaintiff has not alleged negative treatment sufficient to sustain a constructive discharge claim.

Plaintiff's informal complaint, filed with an EEO counselor on March 22, 1988, specifically alleged that various co-workers were ostracizing and openly criticizing her, creating an environment which plaintiff felt would force her to leave her job. *See* Plaintiff's Memorandum in Resistance to Defendant's Motions, Exhibit 7 at 5. Plaintiff, in fact, did later leave her job. Contrary to defendant's assertions, therefore, plaintiff notified the EEO counselor that constructive discharge might result if the derogatory remarks and actions by co-workers did not cease.

The standard for a finding of constructive discharge is objective, that is, would a reasonable person find the working conditions intolerable. *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 171 (10th Cir.1982). Whether the treatment plaintiff received from her co-workers is sufficient to meet this burden and sustain a constructive discharge claim is a question of fact. As such, it is not suitable for judgment at this time.

ACCORDINGLY, IT IS

ORDERED that defendant's motion to dismiss Major General Skipton and Colonel Farkas as improper parties be, and the same hereby is, GRANTED. It is further

ORDERED that defendant's motion to dismiss for failure to exhaust plaintiff's administrative remedies be, and the same hereby is, DENIED. It is further

ORDERED that defendant's motion to strike jury demand be, and the same hereby is, GRANTED. It is further

ORDERED that defendant's motion to strike demand for general damages be, and the same hereby is, GRANTED. It is further

ORDERED that defendant's motion to plaintiff's on-the-job injury claims be, and the same hereby is, DENIED. It is further

ORDERED that defendant's motion to dismiss derogatory remarks claim be, and the same hereby is, DENIED.