Mary Ella RONSONET, Plaintiff,

v.

Robert A. CARROLL, Billy Ray Quave, Alex Toricelli, Jr., Individually; Delmar Robinson, Patrick Collins, Liem "Michael" Necaise, Individually and in Their Official Capacities; the Biloxi Housing Authority; Andrew Cuomo, Secretary of Housing and Urban Development, in His Official Capacity; the Department of Housing and Urban Development; and the United States of America Defendants

No. CIV. A. 1:97CV645GR.

United States District Court, S.D. Mississippi, Southern Division.

Jan. 3, 2000.

Gerald H. Blessey, Gerald Blessey & Associates, Biloxi, for Mary Ella Ronsonet, plaintiffs.

Catherine H. Jacobs, Ocean Springs, MS, for Robert A. Carroll.

Paul J. Delcambre, Jr., Eaton & Cottrell, Gulfport, MS, for Billy Ray Quave, Alex Toricelli, Jr., Michael Tran.

Stephen R. Graben, U.S. Attorney's Office, Southern District of Mississippi, Biloxi, MS, for United States of America.

## MEMORANDUM OPINION

GEX, District Judge.

This cause is before the Court on the motions to dismiss [21–1] [28–1] [32–1] filed by the Department of Housing and Urban Development [HUD], Andrew Cuo-

mo, Secretary of HUD, and the United States of America,[1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Also, before the Court is a motion for discovery [30–1] filed by the plaintiff, Mary Ella Ronsonet, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and being otherwise fully advised in the premises, the Court finds as follows.

### Statement of Facts

#### I. The Parties

In 1996, the plaintiff was 55 years old and had been an employee of the Biloxi Housing Authority [BHA] for 18 years, most recently serving as Comptroller. (Ct. R., Doc. 27, ¶ 18.) The BHA is a housing association created and existing under the laws of the State of Mississippi which owns and operates housing facilities for low and moderate income residents. MISS. CODE ANN. §§ 43–33–3 and 43–33–5 (1972). The BHA has a Board of Commissioners [Board] that is appointed by the mayor of Biloxi. (Ct. R., Doc. 28, Exh. 1, ¶ 12; MISS. CODE ANN. § 43–33–7 (1972).) The Board has the authority to hire the Executive Director of the BHA. (Ct. R., Doc. 28, Exh. 1, ¶ 8.) The Executive Director is responsible for the day-to-day operations of the BHA, including the power to hire and fire employees. (Id.)

The BHA receives part of its funding from HUD, a federal department that provides technical assistance and training to local public housing authorities [HA], and retains oversight of the use of federal funds. (Ct. R., Doc. 21, Exh. 1, ¶¶ 4, 8; 42 U.S.C. § 1439.) In order to receive those funds, the HA enters into an Annual Contribution Contract [ACC] with HUD.[2] According to the ACC, the HA and its Board are responsible for its own operations, in-

---

1. Unless specifically identified otherwise, the Court will refer to HUD, Cuomo and the United States of America, hereinafter, as the federal defendants.

2. (Ct. R., Doc. 21, Exh. 1, ¶ 8; ACC attached to Exh. 1, p. 2; 42 U.S.C. §§ 1437c and 1439.)

cluding the hiring and firing of staff.[3] (Ct. R., Doc. 21, ¶ 8; ACC attached to Exh. 1, pp. 5–7.) The ACC also has a specific provision which provides as follows:

> During any such period, HUD may, in the name and on behalf of the HA, or in its own name and on its own behalf (as HUD shall solely determine), exercise any and all rights of the HA under this ACC, and perform any and all obligations of the HA under this ACC. Nothing herein shall be deemed to make the action(s) or omission(s) of the HA attributable to HUD.

(*Id.* at ¶ 9; ACC attached to Exh. 1, p. 9.) Ruby Busick was the HUD Director assigned with the responsibility of providing technical assistance, training, and monitoring over the BHA.

The Mississippi Regional Housing Authority VIII [MRHA] is an entity separate and distinct from HUD which also provides technical assistance and oversight of local housing programs throughout Mississippi such as the BHA. (Ct. R., Doc. 24, Exh. H, p. 1; Doc. 28, Exh. 1, ¶ 11.) Roy Necaise was the MRHA's Executive Director. (*Id.*) In conjunction with an Inter–Agency Agreement as discussed *infra*, the MRHA allowed one of its employees, Pete Capuano, to serve as Interim Executive Director of the BHA from May 27, 1997, to April 30, 1998. (Ct. R., Doc. 28, Exh. 1, ¶ 11; Doc. 29, Exh. A.)

## II. *The Factual History*

On or about July 17, 1996, the plaintiff submitted her application for the advertised position of Executive Director of the BHA. (Ct. R., Doc. 27, ¶ 18.) The plaintiff alleges that the Board did not allow anyone to interview for the position and hired Robert Carroll, who the plaintiff claims was an unqualified younger male. (Ct. R., Doc. 24, Exh. C, p. 6, ¶ a; Doc. 27, ¶ 18.)

Consequently, the plaintiff filed a charge with the Equal Employment Opportunity Commission [EEOC] against the BHA on September 4, 1996, alleging sex and age discrimination for the Board's failure to interview or hire her for the Executive Director position. (Ct. R., Doc. 27, ¶¶ 5, 18; Doc. 28, Exh. 2, pp. 5–7.) The EEOC issued the plaintiff a right to sue notice on September 24, 1997. (Ct. R., Doc. 28, Exh. 2, p. 1.)

On December 17, 1997, the plaintiff filed suit against the BHA and its individual commissioners alleging sex and age discrimination as asserted in her EEOC charge in violation of Title VII of the Civil Rights Act of 1964 [Title VII], as amended, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act [ADEA], 29 U.S.C. § 621, *et seq.* (Ct. R., Doc. 1, ¶¶ 3, 16–17.)[4] Although not previously identified in her EEOC charge, the plaintiff also asserted retaliation and sexual harassment claims against the BHA's commissioners and Carroll. (*Id.* at ¶¶ 18–19.) The plaintiff further alleged that her constitutional rights were violated under 42 U.S.C. §§ 1983 and 1988. (*Id.* at ¶ 3.)

Prior to filing her initial complaint, HUD conducted an internal audit of the BHA. (Ct. R., Doc. 24, Exh. C.) As a result of that audit, HUD barred Carroll from dealing with HUD programs for one year because of his "improper conduct and mismanagement." (*Id.* at Exh. D.) In a news release, HUD announced that, "[t]he decision is expected to lead to Executive Director Robert Carroll's resignation or dismissal, because his job requires regular dealings with HUD's public housing programs." (*Id.*) In fact, the BHA accepted Carroll's resignation in May of 1997.

On or about May 20, 1997, members of the BHA, the MRHA, and HUD entered

---

3. The ACC requires the HA to comply with state and federal laws pertaining to civil rights, equal opportunity, and nondiscrimination regarding its employees or applicants for employment.

4. In her complaint, the plaintiff admitted that she was an employee of the BHA. (*Id.* at ¶ 1.)

into an Inter–Agency Agreement requiring, in part, as follows:

PURPOSE:

The purpose of this Inter–Agency Agreement is the provision by the MRHA VIII to provide a qualified staff in the form of Interim Executive Director, Peter P. Capuano, and other qualified staff, as needed, in connection with technical assistance to [BHA] and in conjunction with [HUD] staff.

A. General Description of Services to be Performed

Serve as Interim Executive Director to the [BHA]. This assignment is a top priority in the partnership established by [HUD] Director Ruby S. Busick, BHA [Board], and [MRHA] Executive Director Roy E. Necaise to assist the BHA [Board] and staff in turning around an immensely troubled agency.

Mr. Capuano, as Interim–Executive Director, will be responsible and have full authority as Director for BHA administrative and operational activities . . .

B. Term of Performance

The contract period will be for the period beginning Tuesday, May 27, 1997, not to exceed a total of twelve (12) months . . .

C. Compensation

Compensation for Mr. Capuano's salary and mileage will be reimbursed to the [MRHA] by the BHA from their operating funds . . .

(Ct. R., Doc. 29, Exh. A.) As previously stated, Capuano then served as Interim Executive of the BHA at the BHA's expense.

On January 27, 1998, Necaise sent a letter to Cuomo explaining that MRHA's purpose under the contract was to provide technical assistance and to correct deficiencies within the BHA as identified by HUD in its audit. (Ct. R., Doc. 24, Exh. H, p. 1.) Necaise informed Cuomo that, "[t]he administrative function of the [BHA] had to be totally reorganized." (*Id.*) Necaise further explained the inherent difficulties in competing with Biloxi's agenda to put casinos above the need for low-income housing and requested that the BHA "needs to come from under the city politics and be taken over by HUD." (*Id.* at 1–2.) Because HUD did not provide any assistance to the MRHA and even began an audit of that agency, Necaise informed Cuomo that:

as of May 1, [MRHA] will elect not to renew our contract to act as mentoring agency for [BHA]. Our efforts there were at no cost to HUD or others. Our assistance was purely in an effort to correct conditions there and assist HUD in correcting a bad situation.

(*Id.*) Necaise subsequently sent a letter to Busick advising her that MRHA would not allow its employee, Capuano, to remain as Interim Executive Director of the BHA after April 30, 1998. (Ct. R., Doc. 24, Exh. I.)

Prior to leaving his position as Interim Director, Capuano sent a letter to HUD requesting the approval of a new consolidated staff position to perform the duties of several positions that were being eliminated effective May 1, 1998.[5] (Ct. R., Doc. 24, Exh. J.) Capuano simultaneously sent the plaintiff a notice on March 11, 1998, notifying her that the comptroller position would be abolished on May 1, 1998. (*Id.* at Exh. N.) The plaintiff was given the first option to accept a bookkeeping position with commensurate salary. (*Id.*) Capuano

---

**5.** The 1996 audit detailed the corruptive practices of the BHA under Carroll's direction and required corrective action as follows: "[t]he BHA shall request permission from [HUD] before any future expenditures of housing authority funds are used for hiring or for in-house promotions." (Ct. R., Doc. 24, Exh. C, p. 7.) The audit also required the BHA "to start documenting their files so that it can be determined that all hiring practices do comply with the ACC." (*Id.*) The audit did not require permission or notification of any reorganization, reduction in force, or termination of an employee from the BHA, only for hiring and in-house promotions.

subsequently retracted the offer and gave her a notice of termination on April 22, 1998. (*Id.* at Exh. K.) On May 5, 1998, the plaintiff's attorney sent a letter addressed to Capuano, requesting a hearing regarding the plaintiff's termination from the BHA. (*Id.* at Exh. L.)

Without receiving a response, the plaintiff filed her first amended complaint on June 22, 1998, and added Necaise and the federal defendants as parties to the action. (Ct. R., Doc. 14.) Although the plaintiff again admitted that she was an employee of the BHA, she claimed that the federal defendants appointed Necaise as Interim Executive Director over the BHA. (*Id.* at ¶¶ 1, 23.) The plaintiff further maintained that Necaise, "with the approval or deliberate indifference" of the federal defendants, demoted the plaintiff, fired her, and changed the requirements for the Executive Director position in order to preclude the plaintiff from applying. (*Id.* at ¶ 24.) Prior to filing the first amended complaint, the plaintiff did not file any internal administrative remedies or an EEOC charge naming the federal defendants as her employer. (Ct. R., Doc. 21, Exh. 2.) In response, the federal defendants filed a motion to dismiss. (Ct. R., Doc. 21.)

Unlike the previous qualifications requiring at least five years experience in public housing programs with three years at management level, the BHA again advertised for its Executive Director position on or about July 8, 1998, and required applicants to have both a bachelor's degree and experience. (Ct. R., Doc. 24, Exhs.A, M.) The plaintiff was not able to reapply for the position because she did not have a bachelor's degree at that time.

At a conference with the Court on January 14, 1999, the plaintiff was granted permission to amend her complaint against the federal defendants. (Ct. R., Doc. 26.) On January 25, 1999, the plaintiff filed an "amendment to the amended complaint," hereinafter referred to as the second amended complaint. (Ct. R., Doc. 27.) In the second amended complaint, the plaintiff claimed that she was "a former employee of the [BHA], who, during the period complain[ed] of, also enjoyed the dual status of a person having the rights of a federal employee as a result of the control of her employment status by the federal defendants." (*Id.* at ¶ 1.) The plaintiff further alleged, in part, as follows:

after filing the original Complaint, she was unlawfully demoted and then dismissed under the direction and authority of the federal defendants in retaliation for her filing an EEOC complaint and her whistleblowing and expression of opinions about public policy acts and omissions by the federal defendants as well as the non-federal defendants ... [HUD] operates and has jurisdiction and/or legal authority over the [BHA] and the employment and wrongful discharge of the plaintiff ... Carroll was dismissed in May of 1997 by direction of Andrew Cuomo, but the Defendant [BHA] and its board members, acting under the direction of and in conspiracy with the defendants [Necaise and federal defendants], proceeded thereafter to deny the Plaintiff fair and equal consideration for the position of Executive Director or even Acting Executive Director, and instead placed younger males as Acting or Interim Executive Director and in other supervisory positions for which the plaintiff was qualified without giving the plaintiff an opportunity to apply ... The plaintiff frequently expressed her disapproval of the mismanagement and discriminatory policies of Roy Necaise and the federal and non-federal defendants in office after the filing of her original Complaint in this action, including but not limited to her disapproval of the change in the job description to be advertised for a new Executive Director of the [BHA], a change designed to eliminate the plaintiff from consideration [for the position.]

(*Id.* at ¶¶ 1, 16, 20, 24.) The plaintiff also maintains that the federal defendants violated her due process, equal protection,

and free speech rights in contravention of the United States Constitution. (*Id.* at ¶¶ 2, 31.) [6]

In response to the second amended complaint, the federal defendants filed a second motion to dismiss and a supplement to that motion. (Ct. R., Docs.28, 32.) The federal defendants provided the affidavits of Busick who declares that, "HUD has never, directly or indirectly, taken over the operations of the [BHA]." (Ct. R., Doc. 32, Exh. 1, ¶ 7.) Busick further claims that, "[e]xcept as provided for by statute or regulation for all public housing authorities, no employee of the [BHA] or the [MRHA] received regular work assignments from HUD, or benefits from HUD, or were subject to HUD's control in the manner in which the employee performed his or her job function." (*Id.* at ¶ 6.) More importantly, Busick maintains that neither the plaintiff nor any members of the BHA, MRHA, or the Board have ever been employed by HUD. (Ct. R., Doc. 28, Exh. 1, ¶¶ 11–12; Doc. 32, Exh. 1, ¶ 6.)

### Standard of Review

Dismissal for lack of subject matter jurisdiction is reviewed *de novo*. *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir.1992). A claim may not be dismissed for lack of subject matter jurisdiction "unless it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992) (citation omitted). Likewise, a dismissal for failure to state a

claim is reviewed pursuant to identical standards. (*Id.*)

### Legal Analysis

It is well settled that the United States cannot be sued unless it has expressly waived its sovereign immunity and has consented to be sued. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). Waivers of sovereign immunity are to be strictly construed in favor of the sovereign, and the terms of the government's consent to be sued define the court's jurisdiction to entertain the suit.[7] Thus, without the necessary waiver of sovereign immunity, this Court lacks jurisdiction over the plaintiff's allegations.

A waiver of such immunity exists under Title VII and the ADEA against a department of the federal government when an "employee" of a federal agency or an applicant for employment with that agency brings a suit for discrimination. 42 U.S.C. § 2000e–16(a); 29 U.S.C. § 633a. Moreover, an employee or applicant must comply with administrative requirements, which may include the filing of an EEOC charge, prior to bringing a civil action against a federal agency. 42 U.S.C. §§ 2000e–5 and 2000e–16(c); 29 U.S.C. § 633a(d); [8] *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir.1995) (citation omitted). Exhausting the administrative procedures is required. *Brown v. General Servs. Admin.*, 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

---

**6.** In addition to asserting jurisdiction against the federal defendants under Title VII and the ADEA, the plaintiff claims that jurisdiction exists under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*, and the United States Housing Act of 1937, 42 U.S.C. §§ 1404a and 1437, *et seq.* (Ct. R., Doc. 27, ¶ 2.) Moreover, the plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure requesting reinstatement to her former position. (*Id.*)

**7.** *Id.; McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951); *see also Koehler v. United States*, 153 F.3d 263, 267 (5th Cir.1998) ("sovereign immunity deprives the courts of jurisdiction irrespective of the merits of the underlying claim. If the specific terms of the statute are not met, the federal courts have no jurisdiction to address the merits of the plaintiff's claim").

**8.** The ADEA requires a charge to be filed with the EEOC, even against a federal agency, prior to filing suit.

The plaintiff did not follow any administrative requirements prior to filing suit against the federal defendants, including the filing of an EEOC charge. The exhaustion requirements, however, are "subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Pacheco v. Rice,* 966 F.2d 904, 905 (5th Cir.1992) (citations omitted). Of those three, the plaintiff only raises arguments concerning the applicability of waiver. Thus, in order to determine whether this Court has jurisdiction, two primary issues must be resolved as follows: (1) whether the plaintiff's obligation to follow the administrative requirements or to file an EEOC charge against the federal defendants should be waived; and (2) whether the plaintiff was a federal employee entitled to bring such an action.

I. *Whether the Administrative and EEOC Filing Requirements should be Waived*

The instant action does not involve a situation where the plaintiff filed an untimely charge or pursued administrative prerequisites in an untimely fashion. The plaintiff simply amended her suit to include allegations against the federal defendants without satisfying any statutorily required avenues. The United States Supreme Court has held that a party must initially seek relief within the alleged discriminatory agency. *Brown, supra,* 425 U.S. at 832, 96 S.Ct. 1961; 42 U.S.C. § 2000e–16(c). The party may then seek further review with the EEOC. (*Id.*) Thus, there are two avenues to pursue, neither of which the plaintiff followed.

▪ The plaintiff argues that her duty to file an additional administrative charge of discrimination against the federal defendants should be waived because HUD did not provide her with any guidance on filing charges of discrimination against it. The Court finds this argument to be without merit.

First, the plaintiff was represented by counsel on May 5, 1998, shortly after she received her notice of termination. Although her attorney sent a letter to Capuano requesting a pretermination hearing, Capuano no longer served as the Interim Executive Director of the BHA at that time. It is significant that the letter was addressed to Capuano in his capacity as Interim Executive Director of the BHA and not HUD. Despite her representation by counsel, the plaintiff did not attempt to file any internal grievance with HUD. Likewise, a review of the letter requesting a hearing reveals that it was not a formal complaint. Even assuming *arguendo* that HUD was in fact her employer and the letter satisfied the initial filing of an internal grievance with that federal agency, the plaintiff did not comply with the time constraints found in 42 U.S.C. § 2000e–16(c) when she prematurely filed suit against the federal defendants.

Second, the plaintiff only filed an EEOC charge against the BHA. Title VII and ADEA procedures require that a "civil action ... be brought against the respondent named in the charge." 42 U.S.C. § 2000e–5(f)(1). The plaintiff cites numerous cases where the courts have held that a party is not required to file a subsequent EEOC charge for retaliation when it evolves out of an earlier charge of discrimination against the "same" employer. *See Carter v. South Central Bell,* 912 F.2d 832, 841 (5th Cir.1990); *Gupta v. East Tex. State Univ.,* 654 F.2d 411, 414 (5th Cir.1981); Those cases can be distinguished because the plaintiff filed only one EEOC charge, and did not name HUD as her employer or make any allegations against the federal defendants in that charge. More importantly, the federal defendants first discovered her claims against them when they were served with the amended complaint. Thus, contrary to the plaintiff's assertion, the Court finds that the federal defendants were prejudiced by her failure to file an administrative charge against them, *i.e.* they were denied the opportunity for con-

ciliation and administrative relief. *See Hoffman v. Boeing,* 596 F.2d 683, 685–86 (5th Cir.1979) (citations omitted).

For the reasons above, the Court finds that the requirement to pursue internal administrative remedies or an EEOC charge should not be waived, estopped, or equitably tolled. The Court therefore finds that it lacks subject matter jurisdiction. As a result, the federal defendant's motion to dismiss for lack of subject matter jurisdiction should be granted.

## II. *Rule 56(f) Motion*

Alternatively, the Court is faced with a Rule 56(f) motion seeking further discovery on the federal employee issue. Specifically, the plaintiff requests permission to take the depositions of Necaise, Capuano, Busick and members of the Board, to determine whether the federal defendants were in control of the demotion, lack of a pretermination hearing, firing, and the subsequent change in the description of the Executive Director's qualifications.

■ A Rule 56(f) motion for additional discovery is utilized in a summary judgment context. Unlike a motion to dismiss under Rule 12(b)(6) for failure to state a claim, matters outside the pleading do not convert a motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment. *Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1157–58 (5th Cir.1981) (citations omitted). The Court therefore finds that additional discovery under Rule 56(f) is not appropriate, and should be denied.

■ A motion to dismiss for lack of subject matter jurisdiction "may be decided by the district court on one of three bases: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ynclan v. Department of Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991) (citation omitted). The Court has the discretion to allow affi-davits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Oaxaca v. Roscoe,* 641 F.2d 386, 391 (5th Cir.1981) (citations omitted). Assuming *arguendo* that the plaintiff properly complied with her administrative prerequisites, the Court finds that neither a hearing nor additional discovery on the jurisdictional issue is needed under the circumstances of this case.

## III. *Whether the Plaintiff was a Federal Employee*

■ According to the plaintiff, there is a delicate line between a direct intervention by HUD and an indirect method through an agreement with the MRHA. In support, the plaintiff claims that the Inter–Agency Agreement made Necaise an agent of the federal defendants and "clothed" him with the authority of a federal officer. (*See* Ct. R., Doc. 27, ¶ 23.) The Court does not agree. The plaintiff relies on the fact that the Inter–Agency Agreement refers to a "partnership" between HUD, the MRHA, and the BHA. The Court finds that the partnership concept is a term of art. The BHA's Board, HUD, and the MRHA agreed to partner to help turn around a troubled local agency such as the BHA. Undoubtedly, HUD partners with state and local governments, other federal agencies, and independent agencies in numerous capacities. It is illogical to assume that employees of those entities become employees of HUD by virtue of a partnership agreement. As discussed *infra,* the Court alternatively finds that the plaintiff was simply an employee of the BHA.

It is undisputed that the BHA was in total disarray in 1996 and 1997. In order to keep HUD from intervening and taking over, the BHA requested and agreed to an Inter–Agency Agreement which allowed an independent agency such as the MRHA to provide assistance in correcting deficiencies identified in the audit. The Inter–Agency Agreement expressly allowed MRHA's employee, not HUD, to manage the day-to-day operations and make em-

ployment decisions on the BHA's behalf. The BHA even agreed to reimburse MRHA for Capuano's salary and expenses. The partnership simply evidences HUD's willingness to allow an employee of an independent agency to manage federal programs and funds in accordance with the ACC rather than having HUD intervene and take over BHA's entire operation. HUD's only obligation under the agreement was to provide technical assistance to the BHA in conjunction with the MRHA. The Court therefore finds that any actions by Necaise, Capuano, or the MRHA are solely attributable to the BHA, not the federal defendants.

Moreover, Capuano requested permission from HUD to create a "new" position. HUD required it in accordance with the audit because hiring and in-house promotions affected the use of federal funds by a troubled agency. The Court finds that requiring such corrective action was part of HUD's monitoring function. The Court also notes that HUD did not require notification or prior permission in order to eliminate positions or to reorganize the BHA. That decision was left to the BHA's Executive Director's discretion.

As previously stated, the letter to Cuomo specifically acknowledged the reorganization of BHA's administrative departments and further requested HUD to take over the BHA at the end of the contract. After reviewing the letter, the Court finds that either Necaise or Capuano made the reorganizational decisions attributable to the BHA and that HUD had neither intervened nor taken over the BHA. The Court finds no reference in the letter which would indicate that Necaise or Capuano were employees or agents of HUD as suggested by the plaintiff; rather, the Court finds just the opposite. Considering the fact that HUD audited the MRHA on secondary matters after it had volunteered to assist a troubled local agency, MRHA was hostile and unreceptive to HUD. A simple reading of the letter makes it clear that the MRHA was an independent agency.

The Court further finds that Capuano was an employee of the MRHA who remained in control of BHA's employment decisions until May 1, 1998. After the plaintiff was terminated by Capuano, her attorney addressed a letter to Capuano in his capacity as BHA's Interim Executive Director. The plaintiff even admitted that the BHA was her employer when she filed the first amended complaint. Those facts only reinforce this Court's finding that the BHA was her employer, not HUD.

Furthermore, HUD did not fire Carroll. HUD simply exercised its power under federal law and the ACC, thereby barring him from managing federal funds for a year. *See* 24 C.F.R. §§ 24.100 and 24.105. HUD only "expected" the suspension to result in Carroll's resignation or dismissal. This expectation proved true when Carroll resigned rather than being isolated from managing the federal programs. At that point, only the BHA and its Board had the authority to fire Carroll or request his resignation.

The plaintiff stretches the evidence of record in an attempt to persuade this Court to find that HUD was in control of the MRHA and its employees, or in the alternative, to allow additional discovery on the matter. The record speaks for itself and conclusively establishes that the plaintiff, Necaise and Capuano were neither employees nor agents of HUD. Thus, the Court finds that no further discovery on the jurisdictional issue is required. The Court further finds that HUD did not take control over the BHA either directly or indirectly through the MRHA, the Board, Necaise or Capuano. Because Title VII and ADEA claims can only be maintained against an employer and HUD was not the plaintiff's employer, the Court lacks jurisdiction over the Title VII and ADEA claims against the federal defendants. The Court therefore finds that the federal defendants' motion to dismiss the plaintiff's Title VII and ADEA claims should be granted. The plaintiff, however,

retains a valid Title VII and ADEA claim against the proper party, the BHA.

## IV. Additional Basis for Jurisdiction

### A. Administrative Procedures Act

■ The plaintiff also asserts jurisdiction against the federal defendants under the Administrative Procedures Act [APA] as a waiver of sovereign immunity. The APA is a limited waiver of sovereign immunity that only permits relief other than money damages. See 5 U.S.C. § 702. The plaintiff requests compensatory and punitive damages that are outside the scope of the APA's waiver of sovereign immunity. To the extent that the plaintiff seeks monetary relief, the Court finds that the APA does not provide a waiver of sovereign immunity.

■ Moreover, the APA applies only when there is "no other adequate remedy in a court." 5 U.S.C. § 704. In this case, the plaintiff has another adequate remedy, a lawsuit against her former employer which she is actively pursuing. See Gillis v. United States Dep't of Health and Human Servs., 759 F.2d 565, 575 (6th Cir. 1985) (citations omitted). The request for injunctive relief relating to the Executive Director and Comptroller positions must also be directed, if at all, to the plaintiff's former employer, the BHA and its Board. As noted above, the Board had the responsibility to advertise, interview, hire, and determine the qualifications of its Executive Director. The Court therefore finds that it cannot grant equitable relief to the plaintiff against the federal defendants. For the reasons above, the Court finds that it lacks jurisdiction over the federal defendants under the APA, or in the alternative, that the plaintiff has failed to state a claim upon which relief can be granted.

### B. The United States Housing Act of 1937

■ The United States Housing Act of 1937 [USHA] established the funding for HA programs. See 42 U.S.C. § 1437, et seq. The Act provides that, "[t]he Secretary of [HUD] may sue and be sued only with respect to its functions under the [USHA], as amended." 42 U.S.C. § 1404a. The plaintiff's allegations revolve around her nonselection for the BHA's Executive Director position, her subsequent termination from employment at the BHA, and the alleged discrimination attributable to the BHA while she was employed there. The USHA does not provide for the waiver of sovereign immunity as applicable to any of those allegations. More importantly, the plaintiff failed to identify any provision of the USHA which the federal defendants breached or which might apply in this case. The Court therefore finds that the Court lacks jurisdiction under the USHA, or in the alternative, that the plaintiff has failed to state a claim upon which relief can be granted.

### C. Constitutional Rights

■ As noted above, any deprivation of the plaintiff's constitutional rights occurred, if at all, by the employment decisions attributable to the BHA. The Fifth Circuit has held that, "allegations of discriminatory treatment in connection with public employment that form the basis of a Title VII claim cannot form the basis of a second, separate claim under [42 U.S.C.] § 1983 as well." Jackson v. City of Atlanta, Tex., 73 F.3d 60, 63 (5th Cir.1996). The plaintiff failed to assert any specific facts against the federal defendants that would support a section 1983 action against them that are independent of her employment discrimination allegations against the BHA. (See Ct. R., Doc. 27, ¶ 31.)

■ As support, the plaintiff's due process claim involves her assertion of a right to a pretermination hearing prior to her discharge by the BHA in order to determine the rationale for her discharge. The right to free speech claim is actually related to the allegations of retaliation and sexual harassment by Carroll, the Board, and to the actions of Necaise and Capuano

which were attributable to the BHA. The equal protection allegations involve the Board's denial of an actual interview on equal footing with men and women of all ages. These constitutional right claims evolve from the plaintiff's allegations of discrimination under Title VII and the ADEA against the BHA, not the federal defendants. They simply do not constitute separate causes of action against the federal defendants.

As a result, the Court finds that the plaintiff failed to state a constitutional claim against the federal defendants upon which relief can be granted. The Court therefore finds that the federal defendants' motion to dismiss the plaintiff's constitutional claims should be granted.

### Conclusion

For the reasons above, the Court finds that the federal defendants have not waived their sovereign immunity and the Court lacks subject matter jurisdiction over the plaintiff's Title VII, ADEA, APA, and USHA claims against the federal defendants. The Court further finds that the plaintiff's motion for additional discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure should be denied, and additional discovery on the jurisdictional issue is not needed under the circumstances of this case. The Court alternatively finds that the plaintiff has failed to state a cause of action against the federal defendants under the APA, USHA, and 42 U.S.C. § 1983. The Court therefore finds that federal defendants' motion to dismiss should be granted. Each party shall bear their respective costs relative to these motions.

A separate Judgment in accordance with this Memorandum Opinion shall issue this date.

### JUDGMENT

This cause comes before the Court on the motions to dismiss [21–1] [28–1] [32–1] filed by the Department of Housing and Urban Development [HUD], Andrew Cuo-

mo, Secretary of HUD, and the United States of America. Also, before the Court is a motion for discovery [30–1] filed by the plaintiff, Mary Ella Ronsonet. Pursuant to the Memorandum Opinion entered in this cause, this date, incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED that the plaintiff's motion for discovery [30–1] be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED that the motion to dismiss [28–1] filed by HUD, Cuomo, and the United States of America, be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED that the motions to dismiss [21–1] [32–1] filed by HUD, Cuomo, and the United States of America, be, and are hereby, denied as moot. It is further,

ORDERED AND ADJUDGED that the defendants Department of Housing and Urban Development, Andrew Cuomo, and the United States of America, be, and are hereby, dismissed with prejudice. It is further,

ORDERED AND ADJUDGED that each party shall bear their respective costs relative to these motions.