884 F.2d 1388
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard L. GRAHAM, Plaintiff-Appellant,
v.
Anthony M. FRANK, Postmaster General, U.S. Postal Service,
United States Postal Service, Defendants-Appellees.
 No. 88-3196.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1989.
Decided Aug. 28, 1989.
 
 Robert Patrick Geary for appellant.
 Robert Paul Sindermann, Jr. (Henry E. Hudson, United States Attorney, Robert W. Jaspen, Assistant United States Attorney, Jesse J. Butler, Assistant General Counsel, Office of Labor Law on brief) for appellees.
 Before DONALD RUSSELL and WIDENER, Circuit Judges, and JAMES C. TURK, Chief United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Richard L. Graham appeals the District Court's entry of summary judgment in favor of Postmaster General Anthony M. Frank and the United States Postal Service in this action in which Graham asserts that appellees violated Title VII, 42 U.S.C. Secs. 2000e to 2000e-17 (1982), and breached an employment contract into which Graham assertedly had entered with the Postal Service. We affirm.
 
 
 2
 Graham, a Postal Service employee, objects to his reassignment by the Service in June, 1987, to a position in which the Service scheduled him to work on Saturdays. After Graham complained to an Equal Employment Opportunity counselor that his transfer imposed on his observance of the sabbath on Saturdays, the Service notified him on February 22, 1988, pursuant to 42 U.S.C. Sec. 2000e-16 that he could bring a civil action within 30 days in the appropriate federal District Court. Graham then filed this action in the United States District Court for the Eastern District of Virginia on March 22, 1988. The court had federal question jurisdiction over the subject matter of Graham's Title VII claim under 28 U.S.C. Secs. 1331, 1343(a)(4) (1982), and over the subject matter of his contract claim under 39 U.S.C. Sec. 409(a) (1982).
 
 
 3
 As we review the District Court's entry of summary judgment for appellees, Graham's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). According to Graham's evidence, he has belonged to the Worldwide Church of God since 1975. As a church member, he has observed the period each week from sundown Fridays to sundown Saturdays as his sabbath. The church's tenets call upon adherents to refrain from their usual activities on the sabbath and to worship God. From 1975 until some time after he accepted employment with the Postal Service in 1986, Graham attended worship services on Saturday afternoons in Richmond.
 
 
 4
 Graham applied for a postal position and advised an employment officer that he desired a position which would allow him to have Saturdays off. The Postal Service offered Graham a position in its Richmond division as a machine distribution clerk in September, 1986. In hiring Graham, a personnel officer sent him a letter which stated, in pertinent part:
 
 
 5
 Reference is made to your interview for Distribution Clerk, Machine, and your tentative selection for that position.
 
 
 6
 You are being assigned to Tour I which works 11 p.m. to 7:30 a.m. You will work from Sunday at 11 p.m. through Friday at 7:30 a.m. with Saturday as your nonscheduled day. This schedule is offered to accomodate your request that due to your religious preference you not be scheduled to work from sundown Friday through sundown Saturday.
 
 
 7
 It should be understood, however, that should the needs of the Service necessitate your working on your nonscheduled day, you would be expected to be available for work.
 
 
 8
 In April, 1987, the Service changed Graham's assignment from a part-time flexible position to a full-time one. He was given Tuesdays and Wednesdays off and scheduled to work on Saturdays. The Service has not allowed Graham to have Saturdays off in his new assignment. When Graham repeatedly sought a schedule which would allow him to observe his sabbath, the Service eventually offered him a part-time regular schedule with Saturdays off. Graham rejected this proposal because it would have reduced the number of hours he could work each week, increased his number of work days each week, changed his status from full- to part-time, and rendered him ineligible to apply for other full-time positions in the Service as they became available. Since being reassigned, Graham has applied for roughly 25 full-time positions which would have allowed him to observe his sabbath but has not succeeded in obtaining one.
 
 
 9
 Appellees adduced unrebutted evidence to the District Court to the effect that once Graham had attained a certain level of seniority the Service's national collective bargaining agreement required the Service to change Graham's status from part-time flexible to full-time. In addition, the labor agreement required the Service to honor full-time employees' requests for scheduled days off in order of their seniority. Since many full-time employees preferred to have Saturdays off, the least senior full-time clerks like Graham were assigned to work on Saturdays. The Service allowed Graham to take Saturdays off without pay several times after he was reassigned but stopped doing so because the practice required the Service to pay other employees for overtime work at a premium rate.
 
 
 10
 The District Court found that the Postal Service had made reasonable efforts to accomodate Graham's religious preferences and therefore concluded that appellees had complied with Title VII. The court also found that Graham had not entered into an employment contract with appellees. For these reasons, the court entered summary judgment for appellees and dismissed Graham's complaint.
 
 
 11
 Graham concedes that his Title VII claim is barred under Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), unless the Service contractually assumed special obligations to accomodate his religious preferences. In Hardison, the Supreme Court held that Title VII did not require employers to "deny the shift and job preferences of some employees," or to "deprive them of their contractual rights, in order to accomodate or prefer the religious needs of others." 432 U.S. at 81. Graham's entire action therefore depends on the success of his contract claim. Federal law controls whether Graham entered into a contract with the Service and how any such contract should be construed. United States v. County of Allegheny, 322 U.S. 174, 183 (1944).
 
 
 12
 Graham's evidence cannot support the contention that the Service has contractually bound itself to accomodate Graham's religious preferences.[1] As evidence of a contract, Graham points to the personnel letter of September, 1986, quoted above. The government construes the letter to advise Graham that his permanent schedule might be changed at any time to include Saturdays. The letter might also be construed, however, to say that Graham's initial schedule would not include Saturday shifts but that the need might arise for him to work on Saturdays from time to time, even though his regular schedule called for him to be off those days. It is not clear, therefore, that the letter affirmatively notified Graham that he might be rescheduled to work Saturdays regularly.
 
 
 13
 We hold nevertheless that the letter cannot be read as an undertaking by the Service not to schedule Graham on Saturdays. Even though the letter might not have warned Graham that his schedule might permanently be changed, neither did it assure him that his shifts would not be altered or that his religious preference could be honored in the future.
 
 
 14
 Graham bears the burden of establishing the existence of the employment contract which he asserts entitles him to relief. Because Graham's case suffers from a "complete failure of proof" as to the existence of the contract, an essential element of his case, the District Court properly entered summary judgment for appellees under Federal Rule of Civil Procedure 56(c). Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 15
 We therefore affirm the District Court's entry of summary judgment and dismissal of Graham's complaint.
 
 
 16
 Affirmed.
 
 
 
 [1]
 The government advances two other reasons which, it contends, bar Graham's contract claim. First, it notes that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. General Services Administration, 425 U.S. 820, 835 (1976). By his contract claim, however, Graham complains not of religious discrimination but rather that the Service has not lived up to contractual obligations he says it has assumed. The rule of Brown thus does not bar Graham's contract claim
 The government next argues that under applicable law a postal employee cannot assert employment rights based on an individual contract with the Service. This position finds support in McLean v. United States, 209 Ct.Cl. 720, 720, 538 F.2d 346 (1976), where the Court of Claims ruled that under 39 U.S.C. Sec. 1001(a) (1982) postal workers could not be employed by contract but only by appointment. The Ninth Circuit, on the other hand, has held that 39 U.S.C. Sec. 1208(b) "creates a statutory right to sue for breach of contract that may be maintained by individual Postal Service employees, as well as the labor organization representing union employees." Miles v. United States Postal Service, 561 F.2d 1348, 1350 (9th Cir.1977). We need not decide whether a postal employee can ever predicate an action against the service on an asserted employment contract because we find in this case that Graham has adduced insufficient evidence of an employment contract to survive appellees' motion for summary judgment.