# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 15, 2007         Decided April 6, 2007

No. 06-5114

UNITED STATES DEPARTMENT OF STATE,
APPELLANT

v.

G. CRAIG COOMBS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00025)

*Tara Leigh Grove*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Marleigh D. Dover*, Attorney. *Herbert E. Forrest*, Attorney, entered an appearance.

*Bridget R. Mugane* argued the cause and filed the brief for appellee.

Before: GARLAND and KAVANAUGH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*:   The United States Department of State appeals the district court's grant of appellee G. Craig Coombs's motion for summary judgment.   In the district court, State challenged a decision of the Foreign Service Grievance Board ("FSGB" or "Board") granting relief to Coombs.   The district court, reviewing the Board's decision under the Administrative Procedure Act, denied State's appeal.   We reverse.

I

Coombs joined State in 1990 and, in 1998, was assigned to be an administrative and consular officer at the United States Consulate General in Surabaya, Indonesia.  Coombs's year 2000 employee evaluation report ("EER") was critical of his performance in Surabaya and did not recommend him for promotion.  Based on the 2000 EER, Coombs was "low-ranked" by the Selection Board, which competitively evaluates Foreign Service officers across each class.  As a result, Coombs was referred to the Performance Standards Board ("PSB") for consideration for selection out of the Foreign Service.  The PSB recommended that Coombs be selected out of the Foreign Service, and State notified Coombs of his impending separation in February 2001.  Soon thereafter, State's regional medical officer, Dr. Riesland, learned from Coombs's colleagues at the Surabaya consulate that Coombs was exhibiting troubling behavioral problems.  Under the (apparently false) impression that Coombs was still waiting to undergo a performance review, Dr. Riesland arranged for Coombs to meet with State's regional psychiatrist, Dr. Lauer, for a clinical interview.  After a two and a half hour examination, Dr. Lauer determined that Coombs had "no discernible pathology other than probable characterological

issues." Dr. Lauer observed that "no psychiatric medication seems indicated at present."

Coombs submitted an amended agency-level grievance in May 2001 contesting his separation. His grievance contained an affidavit from Dr. Bristol, a board-certified psychiatrist unaffiliated with State, who, having reviewed prior EERs for Coombs, diagnosed him with Obsessive-Compulsive Personality Disorder and Acute Adjustment Disorder during the time period covered by the 2000 EER. According to Dr. Bristol's affidavit, Coombs's personality disorders became "exaggerated and dysfunctional" due to the stress of his difficult work environment in Surabaya. Coombs, relying on this affidavit, argued that the 2000 EER was "falsely prejudicial" under the terms of the Foreign Service Act ("FSA"), *see* 22 U.S.C. § 4131(a)(1)(A), (E), because it was based on behavior attributable to Coombs's undiagnosed mental illness. State denied Coombs's agency-level grievance on September 21, 2001.

Coombs appealed the agency-level decision on his grievance to the FSGB. In the proceeding before the Board, State disputed Coombs's claim of mental disability and pointed to the psychiatric examination performed by Dr. Lauer, wherein Lauer attributed Coombs's behavior to "character problems." On January 27, 2003, the Board issued its decision, FSGB Case No. 2001-34, stating, *inter alia*, that Coombs's poor performance was in fact behavior attributable to psychiatric illness, that the EER based on his poor performance was falsely prejudicial, and that State's ignorance of Coombs's condition furnished even greater cause to set aside his 2000 EER. In arriving at its decision, the Board had determined that Dr. Bristol's findings were more credible than those of Dr. Lauer because Bristol's familiarity with Coombs's condition was of longer duration than Lauer's, and because Bristol's explanation

of Coombs's behavior was far more detailed and persuasive. Along with other collateral relief, the Board ordered State to rescind Coombs's proposed separation, to expunge his 2000 EER, and to provide him with an appropriate regular assignment unless he was "medically disqualified." State then requested that the Board reconsider its decision, but the Board rejected State's arguments for reconsideration.

Prior to the Board's decision in Case No. 2001-34 (i.e., Coombs's original grievance appeal), Coombs received another unsatisfactory rating in his 2001 EER. Coombs then filed a second agency-level grievance with respect to the 2001 report, alleging that it was falsely prejudicial for the same reasons the 2000 EER had been deemed so. State denied Coombs's second agency-level grievance.[1] Coombs appealed State's decision to the FSGB, and the Board, relying on its determination in Case No. 2001-34, decided the 2001 EER was (also) falsely prejudicial. As relief, the Board ordered that the EER be expunged and that any adverse decision based on the EER be rescinded.

State then sought review of the Board's decisions with respect to the 2000 and 2001 EERs in federal district court. Coombs moved for judgment on the pleadings, and State cross-moved for summary judgment. The district court, treating Coombs's motion as one for summary judgment, granted it. State's motion was denied.

II

---

[1]In denying Coombs's second grievance, State noted that it had requested reconsideration of FSGB Case No. 2001-34, which request was still before the Board.

State objects to the Board's determination on two grounds. First, it is argued that Coombs, by asserting the EERs were "falsely prejudicial" under § 4131(a)(1)(A) and (E), is really making a claim for disability discrimination pursuant to § 4131(a)(1)(H)(iii), which allows Foreign Service officers to bring a grievance for any discrimination prohibited by the Rehabilitation Act.[2] Under the Rehabilitation Act, a government

[2]The FSA provides, in relevant part:

(a)(1) Except as provided in subsection (b) of this section, for purposes of this subchapter, the term "grievance" means any act, omission, or condition subject to the control of the Secretary which is alleged to deprive a member of the [Foreign] Service who is a citizen of the United States . . . of a right or benefit authorized by law or regulation or which is otherwise a source of concern or dissatisfaction to the member, including—

(A) separation of the member allegedly contrary to laws or regulations, or predicated upon alleged inaccuracy, omission, error, or falsely prejudicial character of information in any part of the official personnel record of the member;

. . .

(E) alleged inaccuracy, omission, error, or falsely prejudicial character of information in the official personnel record of the member which is or could be prejudicial to the member;

. . .

(H) any discrimination prohibited by—

. . .

(iii) section 791 of Title 29 . . . .

employee has a valid claim only if he or she can show, *inter alia*, that the employer knew or had reason to know about the employee's alleged impairment when it made an adverse employment decision. *See* 29 U.S.C. § 791(g); 42 U.S.C. § 12112(a); *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 896-97 (D.C. Cir. 1998). Although Coombs's grievance explicitly listed the Rehabilitation Act (as incorporated in the FSA) as potentially providing jurisdiction over his claim, he does not allege that State knew or had reason to know about his alleged disability when it drafted his evaluation reports. Moreover, even if an employer is shown to have acted with knowledge of an employee's disability, only "qualified" employees—those who can perform the essential functions of their job with (or without) "reasonable accommodation"—are protected from discrimination. *See* 42 U.S.C. §§ 12111(8), (9), 12112(a). State argues that the Board, by directing the agency to reinstate Coombs unless "medically disqualified," has imposed a broader obligation on State than that which the Rehabilitation Act requires, and an obligation that is counter to another policy of Congress—that the nation have "a career foreign service, characterized by excellence and professionalism," assuring the "separation of those who do not meet the requisite standards of performance." 22 U.S.C. § 3901(a)(1), (b)(1).

It is State's view that the Board has stretched its authority under the Foreign Service Act to condemn EERs that are "falsely prejudicial," and in doing so has run afoul of congressional policy set forth in the Rehabilitation Act. And if there was any doubt as to congressional intent—which State does not concede—it would be dispelled by the specific inclusion of the Rehabilitation Act as one of the various grievances a Foreign Service officer may bring under the

22 U.S.C. § 4131.

Foreign Service Act. *See* 22 U.S.C. § 4131(a)(1)(H)(iii). Indeed, State emphasizes that Coombs explicitly relied on the Rehabilitation Act in his initial agency-level grievance, and again in his appeal to the Board. The Board's treatment of his falsely prejudicial claim as qualitatively different from a Rehabilitation Act claim simply rewards "artful pleading," according to State.

As an alternative position, State argues that the Board's interpretation of the FSA is contrary to law. According to this argument, the two EERs were not falsely prejudicial because they were not in any sense "false." The government concedes that the Board has the primary authority to interpret the grievance provision of the Foreign Service Act.[3] Were the phrase ambiguous, then, the Board would be entitled to *Chevron* deference, and we would uphold any reasonable interpretation of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). But State argues that the phrase "falsely prejudicial" is in no way susceptible to the Board's interpretation.

We take up State's second argument first. State argues that the term "false" necessarily refers to an intentional misstatement. We disagree. The word is ambiguous; it could mean intentionally false—that may well be its more typical usage—but it is not an inevitable meaning. "False" can also mean simply "not true." The Board's adoption of the second meaning is certainly authorized under *Chevron*. 467 U.S. at 843-45. However, that is not enough to bring the Board home because, whether intentional or not, "false" does, at a minimum, mean untrue, and nothing in either EER is contrary to fact in that

---

[3]Given State's concession, we need not decide whether, with respect to the FSA's grievance provisions, we should defer to the interpretations of the Board (and not the Secretary of State).

sense. Coombs essentially argues that the EERs are incomplete because they do not include a valid psychiatric explanation for his behavior. But to be incomplete is not the same as being "false"—particularly when the person completing the EER is entirely unaware of the omitted information. Thus, the Board's interpretation of "falsely prejudicial" strikes us as an impermissible interpretation of ambiguous language (*Chevron* Step II).

We are puzzled, however, because the Foreign Service Act also authorizes the Board to correct a grievant's personnel record if it finds the record is prejudicial because of an "omission." *See* 22 U.S.C. § 4131(a)(1)(E). That would seem to be a possible statutory basis for the Board to rely on in granting relief to Coombs. We, of course, do not so conclude because it would be up to the Board to make that decision in the first instance.

The more difficult issue is the interrelationship of the Rehabilitation Act and the Foreign Service Act. State, it will be recalled, argues that Congress's specific attention to the personnel problems of disabled employees "occupies the field," so to speak. On State's reading of the two statutes, the Rehabilitation Act provides the exclusive form of relief for disabled Foreign Service officers. As a consequence, the Board may not circumvent the Rehabilitation Act by relying on the general grievance language of the FSA to provide relief to an officer if that officer cannot make out a cause of action under the Rehabilitation Act itself—either because he or she can not show discriminatory intent, or because he or she cannot be reasonably accommodated.

State relies heavily on *Brown v. General Services Administration*, 425 U.S. 820 (1976), in which the Supreme Court held that Title VII of the Civil Rights Act of 1964

provides the sole judicial remedy for federal employees complaining of job-related discrimination. In that case, the plaintiff brought an employment discrimination claim in federal district court after the thirty-day limitation period prescribed by Title VII had expired. Faced with this procedural bar, plaintiff sought to rely on other, less-onerous, anti-discrimination remedies. *Id.* at 823-25. The Court refused to allow the plaintiff to elude Title VII's thirty-day requirement by "artful pleading." *Id.* at 833.

Coombs contends his case is quite different because he is not asserting a discrimination claim. Indeed, he freely admits that State had no knowledge of his disability when it created his EER. There is no reason, according to Coombs, to read a statute banning discrimination as implicitly prohibiting the Board from remedying an incomplete personnel record that became the basis of adverse employment action.

Assuming *arguendo* that Coombs is correct—a point we need not decide—it seems to us that the Board's remedy is still problematic, as well as unexplained. In the Rehabilitation Act, for example, Congress provided that State may *knowingly* discharge a disabled employee who cannot be reasonably accommodated, and under the Act could thus *a fortiori* discharge a disabled employee who cannot be so accommodated when State has no knowledge of the employee's disability. Yet the Board's order directing Coombs's reinstatement unless "medically disqualified" appears to place a substantially greater burden on State. The relief granted by the Board is, at best, ambiguous on this point: How the term "medically disqualified" relates to "reasonable accommodation," the Board does not say. In particular, it does not say whether its order would require Coombs's reinstatement even if he cannot perform the essential functions of the job (even with a reasonable accommodation for his disability).

The Board does not appear to have even considered whether it is reasonable to require reinstatement of such an employee, in light of the demands of the Foreign Service. We think such an omission makes the Board's decision arbitrary and capricious. We therefore vacate and remand for the Board to reconsider its interpretation of 22 U.S.C. § 4131(a)(1)(A) and (E) and whether its ordering Coombs's reinstatement is appropriate in light of both the Rehabilitation Act and the demands of the Foreign Service. The other relief granted by the Board (i.e., expungement of the 2000 and 2001 EERs, insertion of gap memoranda, extension of time to compete for promotion, and attorney's fees) is collateral to the Board's decision to rescind Coombs's separation, and the Board should reevaluate it accordingly.

## III

For the foregoing reasons, the judgement of the district court is reversed and the decision of the Board vacated.