[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11590
Non-Argument Calendar

_____

D. C. Docket No. 1:06-cv-00132-WLS

GENE E. CARTER, SR.,

Plaintiff-Appellant,

versus

SECRETARY OF THE NAVY,

Defendant-Appellee,

DONALD C. WINTER, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

( October 11, 2012)

Before MARCUS, FAY and EDMONDSON, Circuit Judges.

PER CURIAM:

Gene Carter, Sr., proceeding pro se, appeals the grant of summary

judgment in favor of the Secretary of the Navy ("the Navy") in his employment discrimination suit filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16(a).  On appeal, Carter argues that he rebutted the Navy's legitimate nondiscriminatory reason for the adverse employment act and successfully showed that discrimination, based on race, sex, and national origin, was the true motive for the challenged act.  He also argues that the district court abused its discretion in denying his motions for default judgment, as well as by dismissing the other claims in his amended complaint for failure to exhaust administrative remedies.  No reversible error has been shown; we affirm.[1]

Carter filed a complaint against the Secretary of the Navy, alleging failure to promote, discrimination, and reprisal on the basis of race, sex, and national origin.[2] He specifically alleged that his supervisor, Carlos C., had illegally transferred him to Warehouse 1331 to work as a Tools and Parts Attendant (a lower position) and

---

[1] We review de novo the district court's grant of summary judgment.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  And we view the evidence in the light most favorable to the non-moving party.  Id.

[2] Because this case is a circumstantial evidence case, the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 663 (1973), applies.  Under this framework, the plaintiff must first establish a prima facie case, which creates a presumption of unlawful discrimination against the employee.  The employer may then rebut that presumption with legitimate, non-discriminatory reasons for the adverse employment acts.  The employee must then proffer sufficient evidence to create a genuine issue of material fact that the defendant's articulated reasons are pretextual.  See Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008).

then terminated him at the end of his term position.  Carter also stated that Carlos C. slandered his name and reputation during an interview for upward mobility. Carter, an Asian-Pacific Islander, opined that he was treated differently from other employees that were not Islanders.  He described that his supervisors had made degrading remarks, ethnic slurs, and insults against him, such as "Yankee, Damn Yankee, What are you doing here Mr. IBM Man, Flyboy."  On his claim of sex discrimination, he alleged that one of his  supervisors, a woman named C.W., was "not too fond of men in general, especially a man of intelligence;" he believed this observation to be true because she was homosexual.

Briefly stated, the district court concluded that, while Carter had established a prima facie case that he belonged to a protected class -- as an Asian-Pacific Islander/Hawaiian -- and that he was qualified for the position at issue, he failed to rebut the Navy's legitimate, nondiscriminatory reason for the adverse employment act: his own evidence showed that his transfer was based on a personal conflict between himself and his two supervisors, instead of discrimination based on his race, national origin, or sex.

Title VII requires that "[a]ll personnel actions affecting employees or applicants for employment . . . in military departments . . . be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. §

3

2000e-16(a).  The plaintiff bears the burden of proving that the employer discriminated against him unlawfully.  Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000).

The district court properly found that Carter established a prima facie case of race discrimination for his 2001 transfer to Warehouse 1331.  Nevertheless, the Navy articulated a legitimate, nondiscriminatory reason for transferring Carter, namely, that the warehouse had a labor shortage and several people from various departments were loaned to the warehouse to fill its need.  Carter failed to show both that the reason was false and that discrimination was the real reason.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

Although Carter insisted that discrimination based on his race, national origin, and sex was the true reason for the transfer, he presented no evidence other than his unsupported assertions that this basis was the true one.  Carter's own deposition testimony, as well as evidence from his coworkers, showed that a personal conflict between Carter and his two supervisors (C.W. and Carlos C.) was the motivating factor for the transfer.  Based on the record, it appears that C.W. and Carlos C. treated their subordinates disrespectfully, engaging in name calling directed at Carter and at least one other employee.  Though this behavior

4

likely resulted in an unpleasant work environment, it does not show that either

C.W. or Carlos C. was motivated by an unlawful discriminatory animus to transfer

Carter based on his race, national origin, sex, or other protected class. See 42

U.S.C. § 2000e-2(a); St. Mary's Honor Ctr., 509 U.S. at 515, 113 S.Ct. at 2752.

Carlos C. also transferred a white female to Warehouse 1331 at around the same

time, and Carter speculated that the female's transfer was based on her own

"dealings" and "complaints" to the supervisors. Carter's own deposition

testimony and statements before the Equal Employment Opportunity Commission

("EEOC") reflect that he also believed that his transfer was based on his

complaints to and confrontations with C.W. and Carlos C. Thus, Carter failed to

show that a reasonable factfinder could conclude that the Navy's true motivation

for transferring him to Warehouse 1331 was discrimination based on his race,

national origin, or sex.[3]

The district court also did not abuse its discretion in denying Carter's

motions for default judgment against the Navy. See Mitchell v. Brown &

---

[3] In his brief on appeal, Carter appears to challenge the district court's grant of summary judgment because he unsuccessfully applied for hundreds of positions at the Marine Corps Logistics Base ("MCLB"), but was not selected for any of those positions, based on discrimination and retaliatory intent. But these claims were not before the district court at the time it granted summary judgment; and we will not review them. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (explaining that we will not consider arguments on appeal that were not fairly presented below).

Williamson Tobacco Corp., 294 F.3d 1309, 1316-17 (11th Cir. 2002) (a default judgment should be used sparingly, and it "is a drastic remedy which should be used only in extreme situations").  For his first motion for default, Carter has not presented evidence to show that he was prejudiced by the Navy's alleged four-month delay in the filing of a response to his original complaint.  He waited until January 2010, more than two years after the November 2007 filing of the allegedly untimely response, to bring the matter to the district court's attention.  For his second motion for default judgment, Carter failed to show that the Navy's timely responses to his amended complaint prejudiced him by misnaming the defendant "David" rather than "Donald."[4]  In addition, the blame for the misnomer of the defendant in the style of the case belongs to Carter for filing a complaint against "David Winter" rather than "Donald Winter" in the first instance.

Carter's argument that the district court erred in dismissing the other claims contained in his amended complaint for failure to exhaust administrative remedies is without merit.  The EEOC only investigated Carter's claims of race, national origin, and sex discrimination arising out of his January 2001 transfer to Warehouse 1331.  The district court did err in concluding that it -- because Carter

---

[4] The Secretary of the Navy at the time Carter filed his initial complaint was "Donald C. Winter."

had failed to exhaust administrative remedies -- lacked subject-matter jurisdiction over Carter's claims brought under 42 U.S.C. §§ 1981, 1983, and the Fourteenth Amendment.  See Zipes v. Transworld Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (holding that the requirement of exhaustion is not jurisdictional in employment cases).  The district court, however, also dismissed these claims under an alternate theory: Carter failed to state a claim for relief, pursuant to Fed.R.Civ.P. 12(b)(6), because 42 U.S.C. § 2000e-16 provided the exclusive judicial remedy for federal employees to present discrimination claims.  See Brown v. G.S.A., 425 U.S. 820, 834, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976) (holding that a federal employee's discrimination claim under 42 U.S.C. § 1981 warranted dismissal because Title VII provides the exclusive remedy for such claims).  As a result, Carter's other claims were due to be dismissed because he could not state a claim for relief under Title VII without first showing exhaustion of administrative remedies. [5]

AFFIRMED.

---

[5] We find no merit in Carter's assertion that the district court abused its discretion by sua sponte lifting the stay of discovery or ordering Carter to give depositions while the stay was in place, because the stay already had been lifted when Carter was required to give his depositions.

7